**MONFORT OF COLORADO, and Home Insurance Company, Petitioners,**

**v.**

**Robert HUSSON, Director of the Division of Labor, Mike L. Baca, the Industrial Commission of the State of Colorado and William E. Milton, Respondents.**

**No. 85CA1210.**

Colorado Court of Appeals, Div. I.

May 8, 1986.

Watson, Nathan & Bremer, P.C., Peter Watson, Susan R. Chapman, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary K. Maldonado, Asst. Atty. Gen., Denver, for respondents Husson, Baca, and Indus. Comn.

John Hoyman, P.C., John Hoyman, Greeley, for respondent William E. Milton.

STERNBERG, Judge.

Monfort of Colorado and Home Insurance Company (petitioners) seek review of that portion of a final order of the Industrial Commission which awarded William E. Milton (claimant) temporary disability benefits subsequent to his termination from Monfort. We affirm in part, set aside in part, and remand with directions.

In February 1979, claimant sustained an industrial injury to his back which resulted in temporary disability. Claimant underwent surgery for the injury and was released for light duty by his physician on August 1, 1979. Claimant reached maximum medical improvement on September 1, 1979; however, he apparently never recovered to his pre-injury condition.

Monfort's policy regarding lost time because of disability is that an employee must call Monfort daily after medical release. The failure to do so over a three-day period warrants termination. The evidence of what transpired subsequent to claimant's light duty release was conflicting. However, the hearing officer found that on July 25, 1979, claimant contacted Monfort and was informed no light duty work was available. As a result, claimant did not return to work and was terminated on July 26, 1979, for not reporting to work. Claimant was determined to be entitled to temporary partial disability benefits beginning July 23, 1979, with the amount thereof to be determined after taking additional evidence.

Following additional hearings and the submission of a sworn affidavit from claimant, the hearing officer found claimant to have been employed during several periods subsequent to his light duty release. One period was from July 23, 1979, until August 25, 1979; the next began September 7,

1979, and ended in October 1979; other sporadic periods of employment followed thereafter. Because none of the jobs paid wages equal to those claimant had earned at Monfort, temporary partial benefits were awarded for these periods based on claimant's average weekly wage at Monfort. *See* § 8–51–103, C.R.S. (1985 Cum. Supp.).

The hearing officer also found that claimant was unemployed from February 28, 1979, until July 22, 1979; from August 26, 1979, until September 6, 1979; and for other periods in the following three years. Temporary total disability benefits were awarded for these periods. The Industrial Commission affirmed.

### I.

On review, petitioners first assert that the Commission erred in awarding temporary total or temporary partial benefits subsequent to claimant's light duty release on July 23, 1979. They contend that any wage loss after that date was not the result of claimant's industrial injury, but rather the result of claimant's deliberate misconduct which led to his termination.

We must first address the broader issue of whether an injured employee who has not reached maximum medical improvement, and is terminated from the employment out of which the injury arose, is eligible to receive temporary partial disability benefits during subsequent periods of wage loss.

■ Temporary disability benefits are based on lost or impaired earning power of a worker and are designed for protection against actual loss of earnings *as a result of an industrial injury*. *See City of Littleton v. Schum*, 38 Colo.App. 122, 553 P.2d 399 (1976). However, where there is an intervening event between an injury and wage loss, *e.g.*, termination, a question arises whether the wage loss can still be said to emanate from the injury.

Both claimant and petitioners seem to agree that the resolution of this question must turn on the issue of fault. We are aware that other jurisdictions require that for disability benefits to be awardable the termination must be caused by the injury. *See, e.g., Bob's Barricades, Inc. v. Catalano*, 414 So.2d 580 (Fla.App.1982). However, under the circumstances here, we agree with the parties that the issue of fault with reference to the termination is the dispositive consideration. *Accord Calvert v. General Motors Corp.*, 120 Mich. App. 635, 327 N.W.2d 542 (1982). *See also* A. Larson, *Workmen's Compensation Law* § 57.64(a) (1983).

■ Where a temporarily disabled employee is determined to be at fault for his termination, subsequent wage loss is caused not by the injury, but rather by the employee's act which led to the termination. *See Calvert v. General Motors Corp., supra.* From our examination of the Workmen's Compensation Act, § 8–40–101, et seq., C.R.S., (Act), we perceive the legislative intent to be that where a faultless employee is terminated while still temporarily disabled, the resulting wage loss must be attributed to the injury.

The purpose of the Act is to provide protection for employees who sustain injuries arising out of their employment. *Bellendir v. Kezer*, 648 P.2d 645 (Colo.1982). The Act should be liberally construed so as to effectuate its humanitarian purpose of assisting injured workers. *See Conley v. Industrial Commission*, 43 Colo.App. 10, 601 P.2d 648 (1979). However, in so doing, the Act should not be pushed beyond the limits of its purpose so as to provide benefits for those not entitled. *See Industrial Commission v. Baldwin*, 139 Colo. 268, 338 P.2d 103 (1959).

■ Deference to these principles mandates our determination that an employer who terminates a temporarily disabled worker under circumstances held not to be the fault of the employee must pay temporary disability benefits for any resulting wage loss.

With this broad issue so resolved, the dispositive question becomes its application to the specific situation at issue here. Peti-

tioners assert that since claimant was terminated for violating company policy (not calling in) and since he would have retained his job absent this violation, they should not be held liable for any subsequent wage loss.

Petitioners alternatively contend that the evidence reveals that claimant's terminations from subsequent jobs were for claimant's own convenience or economic factors, neither being related to his industrial injury. Therefore, they reason, at a minimum, temporary total benefits for the periods of unemployment should have been denied.

Claimant contends that his termination from Monfort was unwarranted; therefore, petitioners are liable for all of his resulting wage loss. We agree with each party in part.

Here, the evidence is undisputed that claimant called in on the second day following his release and was terminated on the third day. Therefore, claimant's termination could not have been based on the three-day failure to call in policy. The only other incident of asserted misconduct surrounds what transpired when claimant did call in. While Monfort contends that claimant was directed to report for duty, claimant contends he was advised no light duty was available. Resolution of this conflict in claimant's favor carries with it the implication that claimant was not at fault for failing to report to work. We therefore cannot conclude, as petitioners urge, that claimant's resulting wage loss should, ipso facto, go uncompensated.

Nonetheless, we do agree with petitioners that the reason for some of the subsequent wage loss is questionable. However, because it was undisputed that claimant reached maximum medical improvement on September 1, 1979, the Commission erred in awarding temporary total disability benefits thereafter. *See Golden Age Manor v. Industrial Commission,* 716 P.2d 153 (Colo.App.1985) (entitlement to temporary total disability ends once maximum medical improvement is reached).

The record reveals that claimant did not testify at any of five hearings regarding the employment in question. He did state by sworn affidavit that his employer between July 23, 1979, and August 25, 1979, was the Scotch Pub; however, he neglected to state the nature of the employment or the reason for termination. We are therefore unable to determine whether the period of unemployment from August 26, 1979, to September 1, 1979, is attributable to the injury. This is pertinent information since only a physical inability to continue the job duties arising from the injury in question would render the subsequent unemployment compensable. It was claimant's burden to prove his right to benefits. *See Matthews v. Industrial Commission,* 627 P.2d 1123 (Colo.App.1980). The evidence presented was insufficient. Thus the award for temporary total benefits from August 26, 1979, to September 1, 1979, must be set aside.

The remaining issue concerns the award of temporary partial disability benefits while claimant was employed at a lower wage at the Scotch Pub. We note there is evidence that claimant had difficulty obtaining even substandard employment which would accommodate his physical restrictions. Further, there is evidence that claimant remains unable to locate suitable employment for which he has prior training or experience, and that a vocational rehabilitation evaluation has been ordered. This evidence supports a reasonable inference that claimant's wages at the Scotch Pub were the best he could reasonably find under the circumstances. Therefore, the resulting wage loss can be attributed to the industrial injury, and we will not disturb this portion of the award on review. *See Archer Freight Lines, Inc. v. Horn Transportation, Inc.,* 32 Colo.App. 412, 514 P.2d 330 (1973).

## II.

Petitioners next assert the Commission erred in considering the averments contained in claimant's affidavit because they

differed from claimant's earlier testimony. We disagree.

■ This objection primarily concerns claimant's credibility. The determination of credibility is the province of the trier of fact and will not be disturbed on appeal. *See AGS Machine Co. v. Industrial Commission,* 670 P.2d 816 (Colo.App.1983).

Further, where supported by substantial evidence, resolutions of conflicting or contradictory evidence are also binding on appeal. *See Black Mountain Spruce, Inc. v. Johnson,* 670 P.2d 1241 (Colo.App.1983).

■ Here, it is apparent from the record that as early as the first hearing, the hearing officer requested, and the parties contemplated, a separate written chronicle of claimant's subsequent employments. It was therefore reasonable to conclude that claimant may not have testified in complete detail in his earlier testimony in anticipation of providing a complete written record in his affidavit.

We note also that petitioners did not cross-examine claimant on the alleged conflicts. Considering the circumstances as a whole, we perceive no error.

The order is affirmed insofar as it ordered temporary partial benefits paid for the period from July 23, 1979, to August 25, 1979, together with applicable interest. With regard to all other temporary disability benefits, the order is set aside and the cause is remanded with directions to determine the degree, if any, of claimant's permanent disability upon completion of the vocational rehabilitation evaluation and/or program.

PIERCE and METZGER, JJ., concur.