**Carl W. WINTERS, Petitioners,**

**v.**

**The INDUSTRIAL COMMISSION OF the STATE OF COLORADO; Can-Do Lathing, Employer; and State Compensation Insurance Fund, Respondents.**

**No. 86CA0392.**

Colorado Court of Appeals, Div. II.

Dec. 24, 1986.

As Modified on Denial of Rehearings Feb. 12, 1987.

Certiorari Denied (Commission) May 11, 1987.

Law Firm of Melat & Pressman, Alan Higbie, Colorado Springs, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, Asst. Atty. Gen., Denver, for respondent Indus. Comn.

Russell A. Stanley, Denver, for respondents Can-Do Lathing and State Compensation Ins. Fund.

SMITH, Judge.

Carl Winters (claimant) seeks review of a final order of the Industrial Commission which terminated his temporary total disability and vocational rehabilitation benefits. We set the order aside.

Claimant was the sole owner of a lathing and plastering company. The company employed claimant as a lather, claimant's brother as an office manager, and a few others as laborers. In May 1984, claimant suffered an admitted injury which prevented him from returning to lathing or other heavy labor.

Claimant received temporary total disability benefits and was referred for vocational rehabilitation evaluation. During the evaluation, claimant informed his vocational rehabilitation counselor that he did not desire formal retraining for another field, but rather, was in the process of exchanging positions with his brother. In return, claimant intended to transfer a fifty percent ownership in the company to his

brother. Claimant advised the counselor that it could take up to five years before he and his brother could be completely retrained; however, he later stated that he believed the switch could be functional in one year.

The retraining consisted of each brother accompanying the other on their respective jobs and demonstrating the required duties. Because the brothers were required to work together and could not work independently as they had prior to claimant's injury, claimant was required to hire an additional lather to make up for the lost manpower.

During the retraining process, and while claimant continued to receive temporary total disability benefits, claimant made monthly withdrawals of $1000 to $1500 from the company assets to cover his necessary living expenses. This was approximately the same amount claimant had paid himself in salary prior to the injury.

Respondents moved to terminate claimant's vocational rehabilitation benefits as well as the temporary disability benefits. Respondents contended that, because claimant continued to draw his monthly salary, he suffered no wage loss and temporary disability benefits were inappropriate. Respondents also asserted that claimant either was not in need of vocational rehabilitation, or had waived such benefits, by declining to participate in training for another field.

After a hearing, the Industrial Commission concluded that both benefits should be terminated. Relative to vocational rehabilitation, the Commission found that claimant had declined to be retrained and thus had waived further benefits. The Commission also found that if claimant's self-initiated retraining plan could be considered a rehabilitation program, the plan could not be approved because it could not be completed within one year as required by § 8–49–101(4), C.R.S. (1986 Repl. Vol. 3B).

With regard to temporary disability benefits, the Commission concluded claimant had returned to work in a modified position and had failed to demonstrate a wage loss which could serve as the basis for continuing temporary total or temporary partial disability benefits.

### I. Vocational Rehabilitation

#### A.

On review, claimant contends the hearing officer lacked authority to make an initial determination of his eligibility for vocational rehabilitation because Industrial Commission Rule V C(7), 7 Code Colo.Reg. 1101–3, provides that the Director of the Division of Labor must himself determine vocational rehabilitation eligibility.

This contention was not presented to the Industrial Commission in claimant's petition for review; thus, we will not determine it for the first time here. *See Apache Corp. v. Industrial Commission*, 717 P.2d 1000 (Colo.App.1986).

#### B.

Claimant next asserts that his expression of disinterest in formal retraining for another field was insufficient to constitute a waiver of all of his rights to vocational rehabilitation. We agree.

We acknowledge that claimant repeatedly told the vocational rehabilitation counselor that the evaluation and formal retraining process was unnecessary because his only intention and interest was to revise his role and become business manager in his company. Further, we believe this evidence was sufficient from which to conclude that claimant voluntarily and intentionally relinquished a known right to formal retraining in another field. Although we note that public policy generally disfavors the waiver of workmen's compensation benefits, here, where claimant was emphatic that he did not wish to be trained in an entirely new field, we see no reason why a waiver of this particular option cannot be found. *See Johnson v. McDonald*, 697 P.2d 810 (Colo.App.1985).

While we hold that claimant has waived his right to formal retraining in a new field of endeavor, we nonetheless agree with claimant that these facts do not constitute a waiver of all of his rights under the vocational rehabilitation sections

of the statute. Claimant should not be penalized for his commendable effort to retrain himself. Nor should he be required to abandon his business in order to be eligible for the benefits under § 8–49–101, C.R.S. (1986 Repl.Vol. 3A).

It is more equitable and within the purview of the statute that respondents adopt claimant's plan as its own, so long as the plan is feasible and can reasonably be expected to accomplish its goals. Indeed, the Commission's own rules specify that the first priority of vocational rehabilitation should be to return a worker to his same employer in a modified or restructured job. *See Industrial Commission Rules,* Part V (D)(2), 7 Code Colo.Reg. 1101–3.

■ We find no authority in § 8–49–101(4), C.R.S. (1986 Repl.Vol. 3B) for the Commission's conclusion that claimant's plan could not be approved simply because it may not be completed in one year. Rather, the statute provides that vocational rehabilitation services may be extended, *i.e.,* benefits shall be paid, for as long as 52 weeks.

Here, in the event claimant's plan is not completed within the time limits imposed by statute, his income maintenance and other vocational rehabilitation benefits would cease. This is entirely consistent with the limitations imposed by § 8–49–101(4), yet still allows the latitude necessary to accommodate the unique situation with which claimant is faced.

II. Temporary Total Disability Benefits

■ Claimant also contends the Commission erred in suspending his temporary disability benefits because he continued to withdraw income from company assets. Claimant further contends the Commission erred in concluding he returned to work in a modified position and that there was no basis upon which to compute a wage loss. We agree.

We first point out that we have determined that claimant is entitled to income maintenance benefits pursuant to § 8–49–101(1) rather than temporary disability benefits. However, since § 8–49–101(1) provides that the amount of income mainte-

nance benefits should be equivalent to the amount of temporary disability benefits claimant would receive, the analysis concerning lost income is the same, and our discussion is applicable to both income maintenance and temporary disability benefits.

Temporary disability benefits are designed to protect an injured worker from lost income occasioned by an industrial injury. *Monfort of Colorado v. Husson,* 725 P.2d 67 (Colo.App.1986). Where, as here, a worker is self-employed, the inquiry as to lost income may not be clear-cut, but rather may necessitate consideration of the totality of circumstances.

Here, claimant transferred fifty percent of his company to his brother as compensation for taking over the lathing responsibilities. In addition, claimant hired an additional employee to make up for the lost labor occasioned by the training process. These circumstances are a sufficient basis on which to measure lost income.

In addition, claimant's monthly withdrawals from company assets do not defeat his entitlement to temporary disability benefits. A worker's ability to *earn* regular income as the result of his personal labor is not the equivalent to expending personal assets for living expenses, even where the worker contributes some work to the business. *See* A. Larson, *Workmen's Compensation Law* § 57.52(e) (1986).

Here, claimant testified that while he continued to withdraw money for personal necessities, he was not earning any income because the training he was giving his brother, and was receiving in return, did not constitute income producing work. Rather, an additional worker was needed to do the labor required to produce income for the company. See generally *Clingan v. Fairchance Lumber Co.,* 166 Pa.Super. 331, 71 A.2d 839 (1950) (profits derived from a business are not considered earnings unless they are almost entirely the direct result of personal management and endeavor); *Nudo v. Nudo Bros. Equipment Corp.,* 65 A.D.2d 854, 410 N.Y.S.2d 152 (1978) (workers' compensation board's decision that claimant's appearances at the

office could not be construed as performing services sufficient to earn a salary affirmed as supported by substantial evidence). Under these circumstances, we conclude the Commission erred in finding that claimant was not entitled to further temporary disability benefits.

Because of this resolution, we need not address claimant's contention that the hearing officer improperly imposed upon claimant the burden of proving a compensable wage loss.

The order is set aside, and the cause is remanded to The Industrial Claim Appeals Office with directions to conduct further proceedings as are necessary to determine WHETHER CLAIMANT'S PLAN IS FEASIBLE AND WHETHER IT CAN REASONABLY BE EXPECTED TO ACCOMPLISH ITS GOALS, AND IF SO, TO DETERMINE the extent of claimant's lost income, and FOR THE award OF SUCH further benefits AS ARE consistent with the views expressed in this opinion.

STERNBERG and CRISWELL, JJ., concur.