**PDM MOLDING, INC. and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Derrick STANBERG and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 94SC394.

Supreme Court of Colorado, En Banc.

June 26, 1995

Michael J. Steiner, Denver, for petitioners.

Randall M. Calvert, Englewood, for respondent Derrick Stanberg.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *PDM Molding, Inc. v. Stanberg*, 885 P.2d 280 (Colo.App.1994), the court of appeals reversed a decision of the respondent Industrial Claim Appeals Office (ICAO) awarding temporary total disability benefits to respondent Derrick Stanberg, a workers' compensation claimant. The court of appeals held that the termination of an employee for fault does not automatically bar the employee from receiving temporary total disability benefits pursuant to section 8–42–105, 3B C.R.S. (1994 Supp.), of the Workers' Compensation Act of Colorado (the Act). Reasoning that the issue of whether Stanberg had been terminated for fault must be resolved before the question of his eligibility for temporary total disability benefits could be decided, the court of appeals vacated the ICAO's order and remanded the case to the ICAO for an initial determination of whether Stanberg's employment was terminated for fault. *PDM Molding, Inc.*, 885 P.2d at 283–84. Having granted a petition filed by the Colorado Compensation Insurance Authority (the Authority) for certiorari review of the court of appeals' judgment, we affirm the court of appeals' judgment, though for reasons that differ from those adopted by that court, and remand with directions.

I

The Administrative Law Judge (ALJ) made the following pertinent findings of fact. On March 26, 1992, while working within the course and scope of his employment with PDM Molding Inc. (PDM), Stanberg was moving a pallet weighing 200 to 300 pounds. At approximately 12:45 p.m., Stanberg felt a "pop"; experienced pain in his back; and shortly thereafter felt a warm, tingling sensation in his back and leg. On his way to lunch Stanberg met the president of PDM, Jeff Giacchino. Stanberg stated that he had injured his back but that he did not know the extent of the injury. Giacchino then requested a meeting with Stanberg in Giacchino's office at the end of Stanberg's work shift.

At the meeting, Giacchino indicated that he was not satisfied with Stanberg's interaction with his supervisors and co-workers and that he was not satisfied with Stanberg's attendance record. Giacchino intended to counsel Stanberg regarding these matters and did not intend to discuss or take any action because of the injury. Giacchino asked for an explanation of Stanberg's absences. Stanberg did not reply, and Giacchino then asked for Stanberg's resignation. When Stanberg refused to resign, Giacchino terminated Stanberg's employment.

Although Stanberg had made comments to several co-workers that he would file a work-

ers' compensation claim if he were ever fired, the ALJ found that the injury occurred as Stanberg had testified.[1] When Stanberg left PDM he tendered a written report of the accident to Giacchino.

After Stanberg reached his home, he began to experience sporadic pain in his back. He called Giacchino to ask for medical treatment. Giacchino did not admit liability for the injury but did refer Stanberg to a medical center in Highlands Ranch (the center). Giacchino authorized the center to treat Stanberg but requested that Stanberg be tested for drugs as a condition of treatment. Stanberg refused to be tested for drugs and left the center without treatment.

The pain in Stanberg's back increased, and on March 31, 1992, he went to the center for treatment. Stanberg was diagnosed as having an acute back strain and was restricted from lifting or pulling over fifteen pounds and from doing extensive bending. The examining physician also prescribed rest as needed. Stanberg was examined and treated several times at the center in April and May of 1992 for back strain.

Stanberg's usual work with PDM involved lifting or pulling over fifty pounds on occasion and did not permit rest as needed. Stanberg was thus unable to return to his usual and customary employment as a result of this injury. Although light duty work was available at PDM within the restrictions established by the treating physician, PDM never offered such employment to Stanberg in writing.

Stanberg later obtained treatment from a doctor of chiropractic. The chiropractor diagnosed Stanberg as suffering from a sacroiliac joint injury and a grade two lumbosacral joint sprain. He restricted Stanberg from working more than four hours per day, prohibited him from lifting more than twenty-five pounds four times per hour, and prohibited him from sitting more than thirty minutes without a ten-minute standing break. Stanberg's condition gradually improved under the chiropractor's care. The chiropractor indicated that Stanberg would reach max-

imum medical improvement shortly after December 1, 1992. On October 12, 1992, Stanberg located other work.

Stanberg filed a workers' compensation claim seeking an award of temporary total disability benefits from March 27, 1992, through October 11, 1992. PDM denied liability and a hearing was held on November 17 and December 8, 1992. At the conclusion of the hearing the ALJ entered an order holding the Authority liable for benefits under the Act; requiring the Authority to pay Stanberg temporary total disability benefits from March 27, 1992, through October 11, 1992; and requiring the Authority to pay Stanberg interest at the rate of eight percent per annum on all benefits not paid when due.

The Authority appealed to the ICAO pursuant to section 8–43–301, 3B C.R.S. (1994 Supp.), on the ground that because his employment was terminated for fault, Stanberg was not eligible for temporary total disability benefits under the rule established in *Monfort of Colorado v. Husson,* 725 P.2d 67 (Colo.App.1986). The ICAO determined that *Monfort* did not control Stanberg's claim here because *Monfort* was limited to circumstances wherein an injured employee, temporarily unable to perform his or her regular employment, is terminated from subsequent modified employment for fault. The ICAO concluded that the record supported the ALJ's factual findings and affirmed the ALJ's award of temporary total disability benefits.

On certiorari review, the court of appeals held that *Monfort* is applicable to Stanberg's claim and remanded the case to the ICAO for further findings of fact. *PDM Molding, Inc. v. Stanberg,* 885 P.2d 280, 282 (Colo.App. 1994). The court of appeals held that the issue of whether a claimant is discharged for fault is a "threshold question" that must be answered prior to compensation of any injured worker's claim for temporary total disability benefits pursuant to section 8–42–105. The court of appeals also held that a discharge for fault "does not automatically bar

---

1. The parties concede that the ALJ found and concluded that Stanberg was injured in the

course and scope of his employment at PDM.

an employee from receiving disability benefits" and remanded the case to the ICAO for a determination of whether Stanberg was terminated for fault and, if so, whether his work-related disability was the cause of his inability to obtain employment within the restrictions imposed prior to October 12, 1992. *PDM Molding, Inc.*, 885 P.2d at 283–84.

## II

■ The Authority argues that a workers' compensation claimant who is terminated for fault is not entitled to temporary total disability benefits under any circumstances. We disagree.

## A

■ The eligibility of a claimant for temporary total disability benefits is established by the Act. In construing statutes courts must give effect to the intent giving rise to the legislation. *Shapiro and Meinhold v. Zartman*, 823 P.2d 120, 123–24 (Colo. 1992). To carry out that responsibility courts first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *Id.* If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction. *Martin v. Montezuma–Cortez Sch. Dist. RE–1*, 841 P.2d 237, 246 (Colo.1992); *Bloomer v. Board of County Comm'rs*, 799 P.2d 942, 944 (Colo. 1990). That is, if courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said. *Griffin v. S.W. Devanney & Co.*, 775 P.2d 555, 559 (Colo.1989); *State Bd. of Equalization v. American Airlines, Inc.*, 773 P.2d 1033, 1040 (Colo.1989). When the General Assembly adopts a comprehensive regulatory program, the legislation should be construed as a whole when possible, giving effect to all of its parts in the context of the entire scheme. *Martinez v. Continental Enters.*, 730 P.2d 308, 315 (Colo. 1986).

## B

The legislative declaration regarding the Act provides, in pertinent part, as follows:

**Legislative declaration.** (1) It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

§ 8–40–102(1), 3B C.R.S. (1994 Supp.). Section 8–41–301(1) establishes the conditions of recovery as follows:

**Conditions of recovery.** (1) The right to the compensation provided for in articles 40 to 47 of this title, in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted.

§ 8–41–301(1), 3B C.R.S. (1994 Supp.). Section 8–42–103 provides, in pertinent part, as follows:

**Disability indemnity payable as wages—period of disability.** (1) If the injury or occupational disease causes disability, a disability indemnity *shall* be payable as wages pursuant to the provisions of section 8–42–105(2)(a) subject to the following limitations:

(a) If the period of disability does not last longer than three days from the day

the employee leaves work as a *result of the injury,* no disability indemnity shall be recoverable except the disbursement provided in articles 40 to 47 of this title for medical, surgical, nursing, and hospital services, apparatus, and supplies, nor in any case unless the division has actual knowledge of the injury or is notified thereof within the period specified in said articles.

(b) If the period of disability lasts longer than two weeks from the day the injured employee leaves work as the *result of the injury,* disability indemnity shall be recoverable from the day the injured employee leaves work.

§ 8–42–103, 3B C.R.S. (1994 Supp.) (emphasis added). Finally, section 8–42–105 provides for the award of temporary total disability benefits as follows:

> **Temporary total disability.** (1) In case of temporary total disability of more than three regular working days' duration, the employee *shall* receive sixty-six and two-thirds percent of said employee's average weekly wages so long as such disability is total. . . .
>
>  . . . .
>
> (3) Temporary total disability benefits *shall* continue until any one of the following first occurs:
>
> (a) The employee reaches maximum medical improvement;
>
> (b) The employee returns to regular or modified employment;
>
> (c) The attending physician gives the employee a written release to return to regular employment; or
>
> (d) The attending physician gives the employee a written release to return to modified employment, such employment is offered to the employee in writing, and the employee fails to begin such employment.

§ 8–42–105, 3B C.R.S. (1994 Supp.) (emphasis added).

This statutory scheme establishes that injured employees have a right to disability benefits under the Act if the employer

and employee are subject to the provisions of the Act at the time of the injury, if the employee is performing services arising out of and in the course of the employee's employment, and if the injury arises out of and in the course of the employee's employment and is not intentionally self-inflicted. § 8–41–301(1), 3B C.R.S. (1994 Supp.); *Popovich v. Irlando,* 811 P.2d 379, 383 (Colo.1991). An award of temporary total disability benefits is mandatory pursuant to section 8–42–105 if the following conditions exist: (1) the injury or occupational disease causes disability, § 8–42–103(1), 3B C.R.S. (1994 Supp.), (2) the injured employee leaves work as a result of the injury, § 8–42–103(1)(a), (b), 3B C.R.S. (1994 Supp.), and (3) the temporary disability is total and lasts more than three regular workings days' duration, § 8–42–105(1), 3B C.R.S. (1994 Supp.). If these statutory criteria are met, temporary total disability benefits "shall continue until" one of the four events specified in section 8–42–105(3) occurs.

In *Monfort of Colorado v. Husson,* 725 P.2d 67 (Colo.App.1986), the claimant sustained a work-related injury in February of 1979 while employed by Monfort of Colorado (Monfort) that resulted in temporary disability. After undergoing surgery, the claimant was released for light duty work. He never reached his pre-injury condition, but did obtain maximum medical improvement on September 1, 1979.

On July 25, 1979, the claimant contacted Monfort and was informed that no light duty work was available. On July 26, 1979, Monfort discharged the claimant for failure to report to work pursuant to Monfort's policy regarding lost time due to disability. Although the claimant did obtain employment for various periods of time with other employers, the wages he received from such employment were less than the wages he had earned at Monfort.

The Industrial Commission[2] awarded the claimant temporary partial disability benefits for the periods of time during which he was

---

**2.** In 1986 the Industrial Commission was abolished and its powers, duties, and functions were transferred to the Industrial Claim Appeals Office. Ch. 64, sec. 3, § 8–1–102, 1986 Colo.Sess. Laws 463, 463–64; Ch. 64, sec. 52, § 8–53–111, 1986 Colo.Sess.Laws, 463, 479–80.

employed at wages less than the wage he had received at Monfort. Pursuant to the predecessor of section 8–42–105,[3] the Industrial Commission also awarded the claimant temporary total disability benefits for various periods of time during which he was unemployed, including the period of time from August 26 to September 6, 1979, that followed his employment at the Scotch Pub.

On appeal, the court of appeals set aside the Industrial Commission's award of temporary total disability benefits for the period of August 26 to September 1, 1979, because the claimant had not established that such period of unemployment was attributable to his injury rather than to termination from his employment at the Scotch Pub for cause. *Monfort*, 725 P.2d at 70. In so doing, the court reasoned that temporary disability benefits are designed to compensate employees who lose wages as a result of injuries, and that any wage loss experienced by a temporarily disabled employee who is determined to be at fault for his or her termination results not from any work-related injury but from the employee's conduct that led to the termination. *Id.* at 69. Accordingly, the court of appeals held that "the issue of fault with reference to the termination is the dispositive consideration." *Id.*

In this case, the court of appeals noted the holding in *Monfort* that an injured employee who is terminated for fault from the employment out of which the injury arose prior to reaching maximum medical improvement is not eligible for temporary total disability benefits during subsequent periods of wage loss. *PDM Molding, Inc. v. Stanberg*, 885 P.2d 280, 283 (Colo.App.1994). However, the court of appeals also stated that the issue of whether Stanberg was terminated for fault on March 26, 1992, is not dispositive, but that

such issue is a "threshold question that must be resolved before the propriety of the application of [section] 8–42–105 can be addressed." *PDM Molding, Inc.*, 885 P.2d at 283. The court of appeals thus held that termination for fault does not automatically bar an employee from receiving temporary total disability benefits. *Id.* at 283–84 (citing *Wendt v. North Dakota Workers Compensation Bureau*, 467 N.W.2d 720 (N.D.1991); *Marsolek v. George A. Hormel Co.*, 438 N.W.2d 922 (Minn.1989)).

We conclude, as did the court of appeals, that an employee sustaining a work-related injury who is subsequently terminated for fault from the employment out of which the injury arose prior to reaching maximum medical improvement is not automatically barred from receiving temporary total disability benefits.[4] As the Authority agreed at oral argument, the Act is not, as a general proposition, based on principles of fault. The Act provides that a claimant who sustains a work-related injury is eligible for such disability benefits that result from the work-related injury. The fact that an employee who sustains a work-related injury is subsequently terminated for fault by his or her employer does not override the General Assembly's determination that such injured employee is eligible for temporary total disability benefits if the work-related injury in fact contributed in some degree to the subsequent wage loss. To the extent *Monfort* establishes a contrary rule, we reject such rule.[5]

However, as the Authority argues, section 8–42–103(1)(a) requires a claimant to establish a causal connection between a work-related injury and a subsequent wage loss in order to obtain temporary disability benefits.

---

**3.** The prior statute, § 8–51–102, 3B C.R.S. (1986), does not materially differ from § 8–42–105.

**4.** Because we hold that terminating an employee for fault does not automatically bar an award of temporary total disability benefits pursuant to the Act, we need not address the Authority's contention that we should define fault by adopting the legal standard used in the unemployment insurance program as adopted by the court of appeals in *Padilla v. Digital Equip. Corp.*, No. 93CA1536, —— P.2d —— (Colo.App. Dec. 29,

1994), *petition for cert. filed*, Jan. 13, 1995 (No. 95SC39).

**5.** In *Allee v. Contractors, Inc.*, 783 P.2d 273, 279 n. 6 (Colo.1989), we expressly overruled *Monfort* to the extent it might be read as precedent for the cessation of temporary disability benefits in the case of an injured employee who has reached maximum medical improvement but is undergoing evaluation for a vocational rehabilitation program and is awaiting an administrative decision on his or her need for such a program.

Temporary disability benefits are intended to compensate a claimant for actual wages lost during the time the claimant is unable to work because of injury. *Denny's Restaurant, Inc. v. Husson,* 746 P.2d 63, 65 (Colo. App.1987) ("The right to temporary disability benefits is measured by the degree of wage loss attributable to an industrial injury, not by the degree of physical impairment, nor the willingness to seek employment.") (citations omitted). If a claimant establishes that his or her work-related injury contributed to some degree to the wage loss, the claimant is eligible for temporary total disability benefits pursuant to section 8–42–105. Conversely, if a claimant's work-related injury does not contribute to his or her subsequent wage loss, the claimant is not eligible for such benefits.

In cases such as this, where a claimant is injured and is subsequently terminated from the employment during which the work-related injury occurred, the question of whether the alleged wage loss was caused in part by the injury or rather was caused only by the termination for fault must be addressed. The court of appeals held that Stanberg's eligibility for temporary total disability benefits under such circumstances is dependent on the answer to the question of whether his "work-related disability was the cause of his inability to find work within the restrictions imposed prior to October 12, 1992." *PDM Molding, Inc.,* 885 P.2d at 284. The Act requires a determination of whether the injured employee "leaves work as a result of the injury...." § 8–42–103(1)(a), 3B C.R.S. (1994 Supp.). In construing a similar issue arising under Arizona's workers' compensation statute, the Arizona Supreme Court made the following observations in *Arizona Department of Public Safety v. Industrial Commission,* 176 Ariz. 318, 861 P.2d 603 (1993):

> As long as limitations resulting from an industrial injury *contribute* to a claimant's inability to secure employment at pre-injury wage levels, compensation benefits are payable for loss of earning capacity. If, on the other hand, the injury and its sequelae play no part in the worker's inability to find suitable employment, there is no compensable loss of earning capacity.... We do not seek to encourage misconduct by

seeming to reward it [but] we fail to see the wisdom in holding that an employee who loses a post-injury job because of misconduct voluntarily forfeits benefits for a loss of earning capacity which, depending on the nature and extent of disability, may be quite profound.

*Id.* at 607–08 (emphasis added); *accord Garrick v. William Thies & Sons,* 547 So.2d 232 (Fla.App.1989). We find this reasoning to be persuasive, and hold that if a work-related injury contributes to some degree to a claimant's loss of wages, the claimant is eligible for temporary total disability benefits pursuant to section 8–42–105.

### C

The ALJ found and concluded that Stanberg "sustained an injury to his back on March 26, 1992, within the course and scope of his employment with PDM Molding ... [and that Stanberg was] unable to return to work and perform his usual duties because of this injury." These findings and conclusions are sufficient to establish that the injury caused the disability pursuant to section 8–42–103(1) and that Stanberg left work as a result of such injury pursuant to section 8–42–103(1)(a).

The ALJ further found and concluded that Stanberg's disability lasted for more than three regular working days, that Stanberg did return to regular or modified employment with a different employer on October 12, 1992, and that temporary total disability benefits should cease as of that date. The ALJ then concluded that because PDM did not make a written offer of modified employment to Stanberg, an award of temporary total disability benefits was warranted. *See* § 8–42–105, 3B C.R.S. (1994 Supp.).

However, the ALJ made no determination with respect to whether Stanberg was terminated for fault or whether his injury contributed in part to his subsequent wage loss. Because the Authority has denied liability, the case must be remanded to the ICAO for determination of these questions. On remand, the Authority has the burden of proving that Stanberg was terminated for fault. If the Authority satisfies this burden, Stan-

berg must establish that his work-related injury contributed to some degree to his subsequent wage loss and that he is therefore entitled to temporary total disability benefits. § 8–43–201, 3B C.R.S. (1994 Supp.) (a claimant in a workers' compensation claim shall have the burden of proving entitlement to benefits by a preponderance of the evidence); *see Younger v. City and County of Denver,* 810 P.2d 647, 649 (Colo. 1991) (same).

### III

In sum, we affirm the court of appeals' conclusion that when an employee suffers a work-related injury and is subsequently terminated from the employment during which the injury occurs, an initial determination must be made as to whether the termination was for fault. We also affirm the court of appeals' conclusion that such an employee who is terminated for fault is not barred from obtaining temporary disability benefits. We do not agree with the court of appeals' suggestion that to establish eligibility for such benefits the employee must prove that his or her work-related injury was the sole cause of his or her wage loss. Rather, we conclude that if the injury contributed in part to the wage loss, temporary total disability benefits can be denied or terminated only if one of the four statutory criteria set forth in section 8–42–105(3) is satisfied.

For the foregoing reasons, the judgment of the court of appeals is affirmed. The case is returned to that court with directions to remand the case to the ICAO for further proceedings consistent with this opinion.

MULLARKEY, J., dissents and SCOTT, J., joins in the dissent.

Justice MULLARKEY dissenting:

I respectfully dissent.

The majority in this case holds that "an employee sustaining a work-related injury who is subsequently terminated for fault from the employment out of which the injury arose prior to reaching maximum medical improvement is not automatically barred from receiving temporary total disability benefits." Maj. op. at 547. The court also

remands to determine "whether the alleged wage loss was caused in part by the injury or rather was caused only by the termination for fault." Maj. op. at 548. While I agree that an injured employee is eligible for temporary total disability benefits if the injury is work-related and temporarily causes total disability, I disagree with the majority's holding that the issue of fault must be addressed. Based upon the plain language of the statute, I would hold that a claimant is entitled to temporary total disability benefits for the loss of earning capacity caused by the work-related injury.

In construing a statute, "we seek to determine the intent of the legislature as expressed in the language it selected." *Triad Painting Co. v. Blair,* 812 P.2d 638, 644 (Colo.1991). Where the language of the statute is clear and unambiguous, the statute should be applied as written. *Griffin v. S.W. Devanney & Co., Inc.,* 775 P.2d 555, 559 (Colo.1989).

Section 8–42–105(1), 3B C.R.S. (1994 Supp.), specifically states, in relevant part:

In case of temporary total disability of more than three regular working days' duration, the employee shall receive sixty-six and two-thirds percent of said employee's average weekly wages *so long as such disability is total,* not to exceed a maximum of ninety-one percent of the state average weekly wage per week. Except where vocational rehabilitation is offered and accepted as provided in section 8–42–111(3), *temporary total disability payments shall cease upon the occurrence of any of the events enumerated in subsection (3) of this section.*

(emphasis added). Subsection (3) of the same section terminates temporary total disability benefits upon the occurrence of any one of the following conditions:

(a) The employee reaches maximum medical improvement;

(b) The employee returns to regular or modified employment;

(c) The attending physician gives the employee a written release to return to regular employment; or

**550**

(d) The attending physician gives the employee a written release to return to modified employment, such employment is offered to the employee in writing, and the employee fails to begin such employment.

§ 8–42–105(3), 3B C.R.S. (1994 Supp.).

Under this section, a claimant is entitled to temporary total disability payments once an injury occurs which lasts longer than three days' duration. None of the exceptions terminates benefits based upon fault or termination of employment. Temporary total disability benefits are only limited by the occurrence of one of the four listed conditions. I see no basis for creating additional disqualifying factors not found in the statute.

Limiting disqualification to the four statutory factors is important because the disability is total although limited in time. If a person suffers a work-related injury and cannot work, he or she must be compensated for the loss of opportunity and ability to continue working for the current employer or to seek similar employment in another place of business. The temporary total disability provision of the statute is the method selected by the legislature to compensate the injured person for that temporary inability to work and to seek work. If the worker can obtain modified or other work, temporary total disability payments end under section 8–42–105(3)(b).

The issue of fault, then, is irrelevant to the inquiry. Regardless of whether Stanberg was terminated from his position or not, the fact remains that he was not able to continue his work at PDM Molding or to perform similar tasks elsewhere as a result of his work-related injury. Because of his loss of ability caused by the work-related injury, the workers' compensation law entitles him to compensation.[1]

Accordingly, I would hold that Stanberg is entitled to workers' compensation for temporary total disability until one of the four conditions articulated in the statute is satis-

fied. I would reverse the court of appeals with instructions to affirm the award of benefits ordered by the Industrial Claim Appeals Office.

SCOTT, J., joins in this dissent.

---

1. My analysis is inconsistent with the court of appeals' holding in *Monfort of Colorado v. Husson,* 725 P.2d 67 (Colo.App.1986). *Monfort* held that when a temporarily disabled employee is determined to be at fault for his termination,

subsequent wage loss is caused by the employee's act which led to termination rather than the injury he sustained. I would expressly overrule the holding of *Monfort* based upon the plain language of the workers' compensation statute.