Troy **HORTON** and Trent Horton and the Colorado Compensation Insurance Authority, Petitioners,

v.

The **INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO** and Mary S. Dill, Respondents.

No. 96CA0284.

Colorado Court of Appeals, Div. IV.

Nov. 29, 1996.

Rehearinng Denied Jan. 9, 1997.

Certiorari Denied Aug. 25, 1997.

Brandee L. DeFalco, Curt Kriksciun, Colorado Compensation Insurance Authority, Denver, for Petitioners.

Law Offices of Richard K. Blundell, Richard K. Blundell, Greeley, for Respondent Mary S. Dill.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Mary Karen Maldonado, Assistant Attorney General, Denver, for Respondent Industrial Claim Appeals Office.

Opinion by Judge NEY.

Petitioners, Troy Horton, Trent Horton, and their insurer, the Colorado Compensation Insurance Authority (CCIA), seek review of a final order of the Industrial Claim Appeals Panel determining that the temporary total disability benefits payable to Mary Stuart Dill (claimant) should not have been suspended for the period from October 26, 1994, to December 26, 1994. We affirm.

The facts are undisputed. Claimant sustained a compensable injury in 1992, and, at that time, petitioners admitted liability for temporary total disability benefits. From then until the events at issue here, none of treating physicians had opined that claimant had reached maximum medical improvement. On September 23, 1994, claimant's treating physician recommended that she undergo surgery to relieve the effects of the work-related injury. However, because claimant had sustained a fall in March 1994 that aggravated her pre-existing phlebitis, the surgery could not be scheduled until December 26, 1994 when the phlebitis treatment was completed.

On October 26, 1994, petitioners filed a motion to suspend temporary total disability benefits. In addressing that motion, the Administrative Law Judge (ALJ) concluded that the March 1994 fall constituted an intervening injury that delayed claimant's attainment of maximum medical improvement for the industrial injury, and granted petitioners a suspension of benefits from October 26, 1994, to December 26, 1994. On review, the Panel set aside the order.

The CCIA contends that the Workers' Compensation Act contemplates the suspension of temporary disability benefits when the attainment of maximum medical improvement is delayed because of an intervening event. More specifically, it argues that § 8–43–404(3), C.R.S. (1996 Cum.Supp.) demonstrates the intent of the General Assembly to suspend temporary disability benefits when the claimant is unable to participate in medical treatment for the work-related injury because of an intervening event. We disagree.

Section 8–42–103(1)(a), C.R.S. (1996 Cum. Supp.) requires a claimant to establish a causal connection between a work-related injury and a subsequent wage loss in order to obtain disability benefits. The payment of temporary disability benefits is mandatory under § 8–42–105, C.R.S. (1996 Cum.Supp.) if the statutory conditions are met, and such payments must continue until one of the four events enumerated in § 8–42–105(3), C.R.S. (1996 Cum.Supp.) occurs.

Under the statute, if a claimant establishes that his or her work-related injury contributed *to some degree* to a temporary wage loss, the claimant is eligible for temporary disability benefits. *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo.1995). However, the employee need not prove that the work-related injury was the *sole cause* of the wage loss in order to establish eligibility for temporary disability benefits. Rather, benefits are precluded only when the work-related injury plays no part in the subsequent

wage loss. Therefore, if the injury contributed in part to the wage loss, temporary total disability benefits can be denied, suspended, or terminated only if one of the four statutory factors in § 8–42–105(3) is satisfied. *PDM Molding, Inc. v. Stanberg, supra.*

Here, petitioners admitted liability for temporary total disability benefits and they did not contend that the claimant's disability abated prior to the fall and the subsequent recommendation for surgery. Since the claimant was already totally disabled by the injury at the time of the alleged "intervening event," the subsequent wage loss was necessarily caused to some degree by the injury. Thus, the ALJ's findings establish that claimant's injury contributed in part to the subsequent wage loss. Therefore, under *PDM Molding, Inc. v. Stanberg, supra,* claimant was entitled to temporary disability benefits for the disputed period.

*Roe v. Industrial Commission,* 734 P.2d 138 (Colo.App.1986) does not require a different result because it appears that the disability there was entirely the result of an intervening neck injury combined with the claimant's refusal of suitable gainful employment. Furthermore, the court in *Roe* relied on *Monfort of Colorado v. Husson,* 725 P.2d 67 (Colo.App.1986), which was overruled by *PDM Molding, Inc. v. Stanberg, supra,* to the extent that it stood for the proposition that an injured employee is eligible for temporary total disability benefits only if he or she can prove that the work-related injury was the *sole* cause of the wage loss.

Furthermore, we are not persuaded that the ruling in *PDM Molding, Inc. v. Stanberg, supra,* is limited to those cases in which the intervening event is termination of employment. Also, claimant did not refuse or obstruct any treatment but rather, the surgery was contradicted by an aggravation of her pre-existing condition. Thus, § 8–43–404(3) is not applicable here.

Order affirmed.

STERNBERG, C.J., and DAVIDSON, J., concur.