COLORADO SPRINGS DISPOSAL, d/b/a Bestway Disposal; and Colorado Compensation Insurance Authority, d/b/a Pinnacol Assurance, Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO and Matthew J. Martinez, Respondents.

No. 01CA0464.

Colorado Court of Appeals, Div. III.

March 28, 2002.

Rehearing Denied May 23, 2002.

Certiorari Denied Nov. 25, 2002. [1]

Curt Kriksciun, Denver, Colorado, for Petitioners.

Ken Salazar, Attorney General, Laurie K. Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Winston Law Firm, Joseph R. Winston, Haydn Winston, Colorado Springs, Colorado, for Respondent Matthew J. Martinez.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Pepe J. Mendez & Associates, P.C., Pepe J. Mendez, Denver, Colorado, for Amicus Curiae Workers Compensation Education Association.

1. Chief Justice MULLARKEY would grant as to the following issues:
Whether the term "employment" as used in sections 8-42-103(1)(g) and 8-42-105(4), 3 C.R.S. (2001), is ambiguous.

Whether the term "employment" as used in sections 8-42-103(1)(g) and 8-42-105(4), refers to regular employment to modified employment, or to both.

Opinion by Judge DAILEY.

The sole issue in this workers' compensation case is whether Matthew J. Martinez (claimant) is barred from receiving temporary total disability (TTD) benefits because he was responsible for his subsequent termination from employment. We conclude that claimant is entitled to such benefits, and therefore we affirm the final order of the Industrial Claim Appeals Office (Panel) imposing liability on the employer, Colorado Springs Disposal, and its insurer, Colorado Compensation Insurance Authority (collectively CCIA).

In September 1999, claimant suffered disabling injuries in a one-vehicle accident when the trash truck he was driving ran off a curve in the road and rolled. Claimant was cited for careless driving.

The restrictions imposed by the treating physicians rendered claimant unable to perform his usual duties, and he was released to modified duties several weeks later. However, when he returned to work, claimant was immediately terminated because employer determined that he violated a company policy, which provided that an employee involved in a driving accident may be terminated. Modified employment was never offered.

Claimant then requested TTD benefits from the date of the injury until the date he obtained alternative employment. CCIA admitted liability for medical benefits, but denied TTD benefits. CCIA argued that claimant is precluded from receiving TTD benefits because two statutes provide that, effective July 1, 1999, "where it is determined that a temporarily disabled employee is responsible for termination of employment, the resulting wage loss shall not be attributable to the on-the-job injury." Sections 8–42–103(1)(g), 8–42–105(4), C.R.S.2001 (the termination statutes).

The Administrative Law Judge (ALJ) determined that claimant was not "responsible" for his termination as that term is used in the termination statutes. Finding that the statutes were therefore inapplicable, the ALJ ordered CCIA to pay the requested TTD benefits. The Panel affirmed the award, also concluding that the termination statutes were inapplicable, but for different reasons. Finding an ambiguity in the term "employment," the Panel resorted to legislative history and concluded that the termination statutes apply only to the termination of modified employment.

I.

CCIA contends that the term "employment" as used in the termination statutes is not ambiguous and therefore the Panel's resort to legislative history is unwarranted. We agree.

Guidance for our statutory interpretation comes, interestingly enough, from the very case the termination statutes legislatively overruled. See PDM Molding, Inc. v. Stanberg, 898 P.2d 542, 547 (Colo.1995)(even where an employee is at fault for the termination from employment, temporary disability benefits may be awarded if the industrial injury contributed to some degree to the subsequent wage loss), overruled by §§ 8–42–103(1)(g), 8–42–105(4). In that case, the court held:

In construing statutes courts must give effect to the intent giving rise to the legislation. To carry out that responsibility courts first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction. That is, if courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said.

PDM Molding, Inc. v. Stanberg, supra, 898 P.2d at 545 (citations omitted).

■ Here, the Panel found that the term "employment" was ambiguous because "the term could refer to any job the claimant possessed, including the one held at the time of the industrial injury itself . . . . [but] could also refer to modified employment." Admittedly, the term "employment" can be broadly interpreted. However, that is exactly how the General Assembly defined the term for

purposes of the Workers' Compensation Act (Act). *See* § 8–40–201(8), C.R.S.2001 ("employment" means any trade, occupation, job, position, or process of manufacturing, or any method of carrying these on). And, the use of broad language alone does not create an ambiguity, *see Humane Soc'y v. Indus. Claim Appeals Office*, 26 P.3d 546, 548 (Colo. App.2001), especially when the General Assembly is perfectly capable of drawing a distinction between modified employment and regular employment. *See* §§ 8–42–105(3)(b) & (d), 8–42–106(2)(b), C.R.S.2001 (providing that the length of temporary disability benefits depends on the availability of and return to regular or modified employment).

Although the definition of "employment" may be subject to interpretation if "the context otherwise requires," *see* § 8–40–201, C.R.S.2001, nothing in the context here mandates the restrictive view that "employment" means only "modified employment." Indeed, when the termination statutes were enacted, the existing termination cases involved many different factual scenarios, only some of which support the Panel's interpretation that "employment" means only "modified employment." *Compare Black Roofing Inc. v. West*, 967 P.2d 195, 196 (Colo.App.1998)(claimant injured while engaged in regular employment, but terminated for drinking and unexcused absences after returning to modified employment), *and Monfort v. Husson*, 725 P.2d 67, 68 (Colo.App.1986)(because no modified employment was available after injury, claimant was terminated, then began work for subsequent employer, and was terminated for cause), *overruled on other grounds by Allee v. Contractors, Inc.*, 783 P.2d 273 (Colo. 1989), *with PDM Molding, Inc. v. Stanberg, supra*, 898 P.2d at 547 (acts giving rise to termination occurred before industrial injury, and termination occurred on same date as, but after, injury), *and with Bestway Concrete v. Indus. Claim Appeals Office*, 984 P.2d 680, 682–83 (Colo.App.1999)(claimant released to regular employment prematurely, and because his injury prohibited proper operation of vehicle, he was terminated for unsafe driving).

The facts in these cases illustrate the wide range of circumstances the General Assembly sought to address when it enacted the termination statutes, and we may presume that it was fully aware of these different factual circumstances. *See People v. Green*, 734 P.2d 616, 621 (Colo.1987)(it must be presumed that the legislature acted with an awareness of prior decisional law on the subject matter under inquiry); *People v. Burgess*, 946 P.2d 565, 568 (Colo.App. 1997)(same).

Neither *PDM* nor *Bestway* involved modified employment, and if the General Assembly had intended to exclude nonmodified employment factual circumstances from the reach of the termination statutes, it certainly could have tailored the statutes accordingly.

The facts in this case, while novel in that a single act caused both the injury and the termination, cannot be said to fall outside the termination statutes simply because there was no modified employment. And, because it is possible to give effect to the termination statutes by using the ordinary, all-inclusive meaning attributed to the term "employment" in the Act, we will do so. *See PDM Molding, Inc. v. Stanberg, supra*, 898 P.2d at 545.

Accordingly, we conclude that the term "employment" as used in the termination statutes is not ambiguous and encompasses both modified and regular employment. As a result, we have no need to resort to legislative history. *See PDM Molding, Inc. v. Stanberg, supra.*

## II.

Our conclusion about the meaning of the term "employment" does not, however, dispose of this appeal. Although the Panel erred in its interpretation of the term, we nonetheless agree with the result it reached, based on the ALJ's conclusion that claimant was not "responsible" for the termination. Therefore, we perceive no reversible error in the award of TTD benefits here.

The Act provides workers compensation for job-related injuries, regardless of fault. *Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 38, 510 P.2d 891, 893 (1973);

*Digliani v. City of Fort Collins,* 873 P.2d 4, 7 (Colo.App.1993).

■ The Act provides compensation to an injured employee, "even though the employee may be negligent and even if the employer is not negligent." *Frohlick Crane Serv., Inc. v. Mack, supra,* 182 Colo. at 38, 510 P.2d at 893; *see* § 8–41–101(1)(c), C.R.S.2001 (abrogating the defense of contributory negligence in workers' compensation cases).

In return, employers receive immunity from the common law claims of their employees. *See Frohlick Crane Serv., Inc. v. Mack, supra,* 182 Colo. at 38, 510 P.2d at 893 ("The employer is immunized from claims for tortious injuries only because he assumes the burden of compensating a [worker] for all job-related injuries."); *see also* 6 *Larson's Workers' Compensation Law* § 100.01[01], at 100–2 & 100–3 (2001)(while, under workers' compensation laws, "the employer assumes a new liability without fault, it is relieved of the prospect of large damage verdicts").

The term "responsible" as used in the termination statutes appears to introduce into the Act the limited concept of "fault" used in termination cases before the supreme court's decision in *PDM.*

In those cases, the "fault" inquiry focused on the reason or reasons for termination apart from the reason for, or cause of, the injury for which compensation was sought. *See PDM Molding, Inc. v. Stanberg,* 885 P.2d 280, 281–82 (Colo.App.1994), *aff'd, PDM Molding, Inc. v. Stanberg, supra,* 898 P.2d at 543 (acts giving rise to termination occurred before industrial injury); *Padilla v. Digital Equip. Corp.,* 902 P.2d 414, 415 (Colo.App.1994)(claimant's termination was due to his falsification of a time card, an act unrelated to a compensable injury), *on remand,* 908 P.2d 1185, 1186 (Colo.App.1995); *Monfort v. Husson, supra* (employer asserted claimant was terminated not because of his injury but because he thereafter violated company policy by not calling in). Indeed, in *Monfort v. Husson, supra,* 725 P.2d at 69, a division of this court recognized that other jurisdictions award compensation benefits where an employee's termination is caused by his or her injury.

■ In construing the term "responsible," we may not ignore the overall scheme of the Act, *see PDM Molding, Inc. v. Stanberg, supra,* 898 P.2d at 545, which includes a provision requiring a fifty percent reduction in benefits if the employee is injured due to a *willful* violation of a safety rule. Section 8–42–112(1), C.R.S.2001. In light of this provision, we find it highly unlikely that the General Assembly intended to deny completely temporary disability benefits where an employee was terminated for *negligently* (or, for that matter, even willfully) causing a work injury.

This consideration, together with the abrogation of the contributory negligence defense in workers' compensation cases, lead us to conclude that, as used in the termination statutes, the word "responsible" does not refer to an employee's injury or injury-producing activity. Hence, the termination statutes are inapplicable where an employer terminates an employee because of the employee's injury or injury-producing conduct.

To otherwise interpret the term "responsible" and the statutes would, in our view, defeat the Act's major purpose of compensating work-related injuries regardless of fault and would dramatically alter the "mutual renunciation of common law rights and defenses by employers and employees alike." *See* § 8–40–102(1), C.R.S.2001. Because such an interpretation might call into question the constitutionality of the Act, *see Smith v. Gould, Inc.,* 918 F.2d 1361, 1364 (8th Cir.1990)(workers' compensation acts should not be arbitrary and unreasonable, nor should they fail to provide a reasonably just substitute for the common law rights of action taken away), we eschew it here. *See Buckley v. Chilcutt,* 968 P.2d 112, 116 (Colo. 1998)("if two interpretations are possible, we must avoid an interpretation that might render a statute unconstitutional"); *BCW Enters., Ltd. v. Indus. Claim Appeals Office,* 964 P.2d 533, 537 (Colo.App.1997)("when possible, statutes should be construed so as to avoid questions of their constitutional validity").

In this case, the termination statutes are inapplicable because claimant, by driving carelessly, was not "responsible" within the

meaning of those statutes for his termination. Accordingly, claimant is entitled to the TTD benefits awarded.

The order is affirmed.

Judge NEY and Judge ROY concur.