**LONGMONT TOYOTA, INC.; HIH Insurance; and Western Guaranty Fund Services, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Andrew Anderson, Respondents.**

No. 02CA0441.

Colorado Court of Appeals, Div. V.

Feb. 13, 2003.

Rehearing Denied June 12, 2003.

Certiorari Granted March 8, 2004.

---

Clifton, Hook & Bovarnick, P.C., Richard A. Bovarnick, Gary L. Fleming, Denver, Colorado, for Petitioners.

Ken Salazar, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Law Office of Robert A. Garcin, Robert A. Garcin, Loveland, Colorado, for Respondent Andrew Anderson.

Michael J. Steiner, Denver, Colorado, for Amicus Curiae Colorado Compensation Insurance Authority, d/b/a Pinnacol Assurance.

Opinion by Judge TAUBMAN.

In this workers' compensation proceeding, Longmont Toyota, Inc., and its insurer, HIH Insurance (collectively employer), seek review of the final order issued by the Industrial Claim Appeals Office (Panel) which awarded temporary total disability (TTD) benefits to Andrew Anderson (claimant). We set aside the order and remand.

The following facts are not in dispute. Claimant sustained an admitted injury to his lower back on June 5, 2000, while employed as a line mechanic at a car dealership. He returned to modified light duty at full salary on July 26, 2000, but voluntarily resigned on August 31, 2000, for reasons unrelated to the industrial injury. Claimant then obtained employment, which was within his medical restrictions, with another car dealership. However, on September 13, 2000, claimant's condition worsened, he was no longer able to continue with his second employment, and he sought TTD benefits from the date he left that position.

Following an evidentiary hearing, the Administrative Law Judge (ALJ) determined that claimant's worsened condition was due to the natural progression of his work injury and was not caused by any specific intervening event which would constitute a new injury. The ALJ further found that claimant's resignation from his position with the first employer was a volitional act that severed the causal relationship between his wage loss and his work injury. Therefore, the ALJ determined that claimant was responsible for that separation and was barred from receiving temporary disability benefits under § 8–42–105(4), C.R.S.2002.

On review, the Panel concluded that the ALJ had misconstrued § 8–42–105(4) as a permanent bar to all temporary disability benefits where the claimant is determined to be "responsible" for the loss of employment. The Panel held that § 8–42–105(4) precludes recovery for a wage loss only when it is the direct consequence of the independent volitional action which caused the claimant's separation from employment. The Panel then determined that the wage loss after September 13, 2000, resulted not from claimant's voluntary resignation, but from his worsened condition. The Panel, consequently, held that § 8–42–105(4) did not apply and thus claimant was entitled to TTD benefits from the date his worsened condition caused him to resign from his second employment.

Employer contends that the Panel erred in reversing the ALJ's determination

that claimant was responsible for his wage loss within the meaning of § 8–42–105(4). We agree.

Section 8–42–105(4) and identical language in § 8–42–103(1)(g), C.R.S.2002, provide: "In cases where it is determined that a temporarily disabled employee is responsible for termination of employment, the *resulting* wage loss shall not be attributable to the on-the-job injury." (Emphasis added.)

These statutory provisions overrule *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo.1995). *See Colo. Springs Disposal v. Indus. Claim Appeals Office*, 58 P.3d 1061 (Colo.App.2002)(amended termination statutes reintroduce the limited concept of "fault" which was used in termination cases prior to *PDM Molding* and which focused on the reasons for termination apart from the cause of the injury for which compensation was sought). In *PDM Molding*, the supreme court held that an employee who sustained a work-related injury and was subsequently discharged for fault from the employment out of which the injury arose was not automatically ineligible for temporary disability benefits. The determining factor for postseparation benefits was whether the injury contributed to some degree to the loss of wages.

Before *PDM Molding*, when a temporarily disabled employee was determined to be at fault for his or her termination, any subsequent wage loss was deemed to be caused not by the injury, but rather by the employee's act that led to the termination. Conversely, when a faultless employee was terminated while still temporarily disabled, the resulting wage loss was attributed to the injury. *Monfort v. Husson*, 725 P.2d 67 (Colo.App.1986), *overruled on other grounds by Allee v. Contractors, Inc.*, 783 P.2d 273 (Colo.1989). Thus, under the law before *PDM Molding*, when a claimant's voluntary conduct caused his or her termination and the injury played no part in the discharge, a compensable injury was no longer recognized for purposes of temporary disability benefits. *Padilla v. Digital Equip. Corp.*, 902 P.2d 414 (Colo.App.1994), *vacated*, 908 P.2d 1185 (Colo.App.1995).

Here, the Panel acknowledged that § 8–42–105(4), and by implication, § 8–42–103(1)(g), have resurrected the former law in an effort to overrule *PDM Molding* legislatively. Referring to the legislative hearings concerning the enactment of § 8–42–105(4), the Panel further observed that the General Assembly apparently intended to preclude an injured worker from recovering temporary disability benefits where the worker is at fault for the loss of post-injury modified employment, regardless of whether the industrial injury remains a proximate cause of the subsequent wage loss. *See* Hearings on H.B. 99–1105 before the House Business, Affairs & Labor Committee (Jan. 14, 1999, at 2:05 p.m.) and Senate Committee on State Veterans & Military Affairs (Feb. 22, 1999, at 1:39 p.m.), 62d General Assembly, First Session (House & Senate Hearings). However, in interpreting § 8–42–105(4), the Panel focused on the phrase "resulting wage loss" and reasoned that had the General Assembly intended to create a permanent bar to temporary disability benefits when the claimant is responsible for termination of employment, it clearly could have done so by specifying that no *subsequent* wage loss could be attributed to the on-the-job injury.

The word "resulting" is defined as "something that results as a consequence, effect, issue, or conclusion." *Webster's Third New International Dictionary* 1937 (1969). The definition encompasses both direct and indirect consequences, and in this context, the word can plausibly be interpreted either narrowly to mean a wage loss that occurs immediately following a separation for cause, or broadly to mean any subsequent wage loss. The definition of "resulting," therefore, does not answer the question whether the General Assembly intended to preclude an injured worker from recovering temporary disability benefits when the industrial injury remains a proximate cause of a post-injury wage loss with a different employer. Consequently, we find the word "resulting" ambiguous. *See Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189 (Colo.2001)(the word "testimony" was ambiguous as used in the administrative statute because it could be interpreted to include or exclude written testimony as an alternative to oral testimony under oath at a hearing or deposition).

■ When a statute is ambiguous on its face, the reviewing court must resort to ex-

trinsic aids to construction that are probative of the General Assembly's intent, such as the objectives of the legislation, the circumstances under which the statute was enacted, the legislative history, and the consequences of the alternative constructions. *See* § 2–4–203, C.R.S.2002; *United Airlines, Inc. v. Indus. Claim Appeals Office,* 993 P.2d 1152 (Colo.2000). Further, although the interpretation given a statute by the officer or agency charged with its administration is ordinarily entitled to deference, the interpretation must be set aside if it is inconsistent with the legislative intent. *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office,* 5 P.3d 385 (Colo.App.2000).

Here, the legislative history does not address the meaning of the word "resulting." Nor did the discussion in the various committees and floor debates encompass a hypothetical situation similar to the one before us. *See* House & Senate Hearings, *supra;* House Second Reading of H.B. 99–1105, 62d General Assembly, First Session (Jan. 25, 1999).

Nevertheless, as the Panel indicated, the sponsoring legislators expressed a clear intent to overrule *PDM Molding* and completely cut off temporary benefits whenever an injured worker is responsible for separation from the employment when the injury occurred, regardless of the consequences that followed. The proponents of the bill testified that *PDM Molding* had created abuses, which could be curbed only by reinstating the law as it applied prior to that case. Specifically, they asserted that *PDM Molding's* holding frustrated an employer's legitimate right to limit its liability for temporary disability benefits by placing the injured employee in a light duty position at full salary, because *PDM Molding* allowed the employee to collect such benefits even when the employee had been discharged from the light duty position for misconduct. Opponents of § 8–42–105(4) also testified regarding potential abuses by employers were the statute to be adopted, but the amendment was passed nonetheless.

We recognize that use of the phrase "any subsequent wage loss" could have more clearly expressed the General Assembly's intent. However, we find nothing within the legislative history suggesting that the General Assembly intended to limit the bar against temporary disability benefits set forth under § 8–42–105(4). Our conclusion in this regard is further buttressed by the fact that the General Assembly chose not to incorporate the views of the bill's opponents. Therefore, we conclude that the term "resulting" means any wage loss following a termination for which the employee is responsible, and that, once the causative link between the industrial injury and wage loss is thereby severed, it cannot later be restored.

Consequently, we hold that § 8–42–105(4) is to be construed as a permanent bar to receipt of temporary disability benefits when a claimant is responsible for his or her separation from employment and the separation is for causes within the employee's control, but unrelated to the industrial injury.

We note, however, that if claimant's separation from his second employment had been caused by either a work-related aggravation of the old injury or a new injury, § 8–42–105(4) would not bar a claim for temporary disability benefits against claimant's new employer.

The Panel's order is set aside, and this case is remanded for reinstatement of the ALJ's order denying the claim for TTD benefits.

Judge CASEBOLT and Judge NIETO concur.