LAUREL MANOR CARE
CENTER, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO
and Sandra M. Matthews, Respondents.

No. 97CA1543.

Colorado Court of Appeals,
Div. V.

April 16, 1998.

Rehearing Denied April 16, 1998.

Certiorari Denied Oct. 19, 1998.

Miles & Epstein, P.C., Bonnie J. McLaren,
William A. Richardson, Denver, for Petition-
er.

No Appearance for Respondent The Indus-
trial Claim Appeals Office.

Alexander & Ricci, William A. Alexander,
Jr., Colorado Springs, for Respondent San-
dra M. Matthews.

Opinion by Judge MARQUEZ.

In this workers' compensation proceeding,
Laurel Manor Care Center (employer) seeks
review of a final order by the Industrial
Claim Appeals Office (Panel) upholding the
award of temporary total disability (TTD)
benefits to Sandra M. Matthews (claimant).
We set the order aside.

Claimant, a nursing assistant, sustained an
admitted industrial injury to her right shoul-
der on September 11, 1995. She received
medical attention that same day and was
released to modified work on September 13,
1995. The restrictions imposed included lim-
itations on her activities and a prohibition
against using her right arm.

As found by the Administrative Law Judge
(ALJ) after an evidentiary hearing, claimant
reported to work on September 13 and in-
formed her supervisor of the restrictions.
She completed duties within her medical re-
strictions, but refused her supervisor's re-
quest to assist in the Alzheimer's unit be-
cause of concerns that she would need to use
both arms. The supervisor informed claim-
ant that she would only have to supervise the
patients, but claimant refused to perform
such duties. The supervisor then directed
claimant to leave the facility because there
was no other work available within her re-
strictions.

On September 14, 1995, claimant met with
the facility director who reviewed the at-
tending physician's report. He provided a
written list of duties within the medical re-
strictions which could be assigned to her.
Claimant agreed to return to modified em-
ployment, but was advised that she needed
to speak with the director of nursing before
returning to work. Claimant tried to con-
tact the nursing director that day, but was
unsuccessful and made no further attempts.

On September 15, 1995, claimant called
employer and stated that she would not be
reporting to work. Claimant was next
scheduled to work on September 17, 1995.
However, she neither called nor reported to

work. Employer then notified her by letter that her failure to report to work or call on September 17, 1995, resulted in a termination of her employment. The letter further advised claimant that she could call and discuss the termination. Claimant did not contact the director of nursing.

Based upon the foregoing factual findings, the ALJ determined that claimant was offered and did accept modified employment within the physical restrictions set by her treating physician. The ALJ further found that claimant's termination "was a result of her failure to contact the director of nursing and to return to work on scheduled days," and that she was specifically "terminated as a result of her failure to call or to come to work on September 17, 1995." The ALJ concluded that "a preponderance of the evidence establishes that the termination from employment was the fault of Claimant," and that, therefore, she "failed to establish that she left work as a result of her injury after her return to modified employment." Accordingly, the ALJ found that she was not entitled to TTD benefits pursuant to §§ 8–42–103(1)(a) and 8–42–103(1)(b), C.R.S.1997.

The Panel reversed the ALJ's order and remanded for additional findings. The Panel held that, under the applicable test set forth in *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo.1995), the claimant's termination for fault was not determinative and that further findings were needed regarding whether the wage loss subsequent to the termination was, "to some degree," caused by the injury.

On remand, the ALJ found that claimant accepted continued employment with modified duties, but that she was at fault for her termination from employment for the same reasons found previously. The ALJ again determined, therefore, that claimant's loss of wages after her termination occurred as the result of her actions, and not because of her injury. Nevertheless, the ALJ also noted that claimant had been unable to obtain employment because of her restrictions and concluded that the industrial injury contributed to her unemployment. The ALJ, therefore, entered an award of TTD benefits.

On review of that order, the Panel upheld the award of TTD benefits and rejected em-

ployer's contention that claimant had refused to "begin" modified employment and that her entitlement to TTD benefits therefore terminated pursuant to § 8–42–105(3)(d), C.R.S. 1997.

In this appeal, employer reasserts its contention that the ALJ and Panel both erred in failing to find that claimant's right to TTD benefits terminated when she failed to commence modified employment. We agree.

In *PDM Molding, Inc. v. Stanberg, supra,* the supreme court held that an employee who has sustained a work-related injury and who is subsequently terminated for cause is not automatically barred from receiving TTD benefits. The test for determining eligibility for such post-termination benefits is whether the work-related injury contributed in some degree to the subsequent wage loss. Once the claimant shows that the subsequent wage loss was related to the industrial injury, TTD benefits can be denied or terminated only if one of the four statutory criteria set forth in § 8–42–105(3), C.R.S.1997, is satisfied.

One of those criteria is set out in § 8–42–103(d)(1), C.R.S.1997, to wit:

The attending physician gives the employee a written release to return to modified employment, such employment is offered to the employee in writing, and the employee fails to begin such employment....

The termination of TTD benefits under any one of the enumerated conditions is mandatory. *Burns v. Robinson Dairy, Inc.,* 911 P.2d 661 (Colo.App.1995).

In rejecting employer's contention, the Panel stated that the ALJ found that claimant had accepted the offer of modified employment and began that employment on September 13, 1995. The Panel then reasoned that when an employer relies upon § 8–42–105(3)(d), C.R.S.1997, to terminate liability for temporary disability benefits after a separation from modified employment, the issue is not whether the employer offered modified employment prior to the termination, but whether the employer offered modified employment after the termination.

The Panel failed, however, to address the effect of the written list of duties provided by

the facility director on September 14, 1995. In our view, that document constituted an offer of modified employment which claimant accepted as evidenced by her signature on that document. Consequently, contrary to the Panel's reasoning, claimant's failure to commence the work offered occurred prior to her termination. Thus, the termination of TTD benefits was warranted before claimant sustained the wage loss for which she seeks benefits.

Further, claimant has not asserted that the offer on September 14 did not comply with the work restrictions imposed by the attending physician or that it otherwise was inappropriate. As the ALJ specifically found, the very act providing the basis for claimant's discharge was her failure to appear for work after the September 14th offer had been extended. The only explanation for her conduct to be gleaned from the record was her statement that she felt she "had no job" after she failed to report for work on September 15, 1995.

Although the ALJ found that claimant had proved that she was unable to obtain employment after her injury, the ALJ also found that employer demonstrated that the conditions of § 8–42–105(3)(d) were satisfied thereby terminating any entitlement claimant had to TTD benefits. The Panel maintained, however, that "the *PDM* holding would be eviscerated if a claimant's loss of modified employment constitutes a permanent bar to temporary disability benefits." In our view, the same can be said of the Panel's holding with respect to § 8–42–105(3)(d).

If a claimant who is terminated for failure to begin modified employment is nevertheless allowed to recover upon showing a causal connection between the industrial injury and the post-termination wage loss without any showing that the offer of modified employment is somehow unreasonable, an employer could never rely on § 8–42–105(3)(d) to terminate TTD benefits. Because such a result is contrary to the mandate of that particular section, we hold that the ALJ and the Panel erroneously awarded TTD benefits under the circumstances present here.

The order awarding TTD benefits is set side.

ROTHENBERG and KAPELKE, JJ., concur.