**LIBERTY HEIGHTS AT NORTHGATE and American Compensation Insurance Company–RTW Colorado, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Carol Vawser, Respondents.**

No. 00CA2213.

Colorado Court of Appeals, Division II.

July 19, 2001.

Ruegsegger Thomas, LLC, Douglas A. Thomas, Denver, CO, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office of the State of Colorado.

Spencer & Spencer, P.C., Kathleen W. Robinson, Colorado Springs, CO, for Respondent, Carol Vawser.

Opinion by Judge CASEBOLT.

In this workers' compensation proceeding, Liberty Heights at Northgate and its insurer, American Compensation Insurance Company–RTW Colorado (collectively employer), seek review of the final order of the Industrial Claim Appeals Office (Panel) upholding an award of temporary total disability (TTD) benefits to Carol Vawser (claimant). We affirm.

Claimant injured her back on June 20, 1998, during her employment as a nurse's aide. She was thereafter unable to perform her regular job duties and was subject to medical restrictions. Employer made sever-

al consecutive offers of modified employment that claimant accepted and performed. The last offer was made in September 1998, and claimant continued in that position until April 6, 1999, when employer discharged her for excessive absences. Claimant concedes that employer terminated her for reasons that were unrelated to her injury.

Claimant underwent surgery related to her injury and was totally disabled from May 13 through 28, 1999. She thereafter remained unemployed until August 2, 1999, when she accepted another offer of modified employment from employer. Employer admitted liability only for those TTD benefits necessitated by claimant's surgery and otherwise denied liability for the period between her separation and reemployment.

Following an evidentiary hearing, the ALJ found that, although claimant was at fault for her discharge, her continuing inability to perform her regular duties demonstrated that, to some degree, the post-separation wage loss was causally related to the industrial injury. Accordingly, under the principles set forth in *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo.1995), the ALJ concluded that claimant was eligible to receive TTD benefits despite her termination from employment. The ALJ rejected employer's assertion that claimant's loss of employment constituted a "failure to begin" modified employment, which terminated her right to TTD benefits pursuant to § 8–42–105(3)(d)(I), C.R.S.2000, and *Laurel Manor Care Center v. Industrial Claim Appeals Office*, 964 P.2d 589 (Colo. App.1998).

The Panel agreed and upheld the award of TTD benefits on review.

Employer contends that the ALJ erred in failing to find that § 8–42–105(3)(d)(I) barred claimant from receiving TTD benefits. Because we conclude that § 8–42–105(3)(d)(I) has no application in this instance, we disagree.

To establish eligibility for disability compensation including TTD benefits, a claimant must show a causal connection between a work-related injury and a subsequent wage loss. *See* § 8–42–103(1), C.R.S.2000.

Under current law, when a temporarily disabled claimant is responsible for termination of employment, the resulting wage loss may not be attributed to the work injury. *See* §§ 8–42–103(1)(g), 8–42–105(4), C.R.S.2000 (applicable to injuries occurring on or after July 1, 1999, pursuant to Colo. Sess. Laws 1999, ch. 90 at 266).

However, at the time of claimant's injury, an employee who had sustained a work-related injury and who was subsequently terminated for cause did not automatically become ineligible for TTD benefits. The determining factor for post-separation benefits was whether the injury contributed to some degree to the subsequent wage loss. *PDM Molding, Inc. v. Stanberg, supra*. If the claimant satisfied that test, TTD benefits could be denied only if one of the statutory conditions warranting termination of such benefits had occurred. *Champion Auto Body v. Industrial Claim Appeals Office*, 950 P.2d 671 (Colo.App.1997).

Pursuant to § 8–42–105(3), C.R.S.2000, those enumerated statutory conditions are:

(a) The employee reaches maximum medical improvement;

(b) The employee returns to regular or modified employment;

(c) The attending physician gives the employee a written release to return to regular employment; or

(d) (I) The attending physician gives the employee a written release to return to modified employment, such employment is offered to the employee in writing, and the employee fails to begin such employment.

Employer argues that § 8–42–105(3)(d)(I) creates a continuing duty to begin the modified employment that remains in effect as long as the offer of conforming modified employment has not been retracted, changed, or voided. Essentially, employer equates the word "begin" with "perform" and therefore maintains that, because claimant failed to perform the modified employment after her termination, she came within the purview of § 8–42–105(3)(d)(I). Employer then relies upon the holding in *Laurel Manor Care Center v. Industrial Claim Appeals Office, supra*, to assert that, once § 8–42–105(3)(d)(I)

takes effect, TTD benefits cannot be reinstated regardless of whether claimant's post-separation wage loss was caused, in any part, by the industrial injury. We are not persuaded.

In *Laurel Manor Care,* a division of this court held that an employer's liability for TTD benefits terminates under § 8–42–105(3)(d)(I) when a claimant is formally discharged after failing to appear for modified employment that was previously offered and accepted. In that case, the Panel had awarded TTD benefits, stating its concern that "the *PDM* holding would be eviscerated if a claimant's loss of modified employment constitutes a permanent bar to temporary disability benefits." *Laurel Manor Care, supra,* 964 P.2d at 591.

The division disagreed with the panel, reasoning that when a claimant fails to appear for modified employment without any showing that the modified employment offered is somehow unreasonable, application of the *PDM Molding* analysis would essentially prevent an employer from ever relying upon § 8–42–105(3)(d)(I) as a basis for the termination of TTD benefits. Noting that such a result would be contrary to the mandate of that particular statutory section, the division held that the claimant in that case, who had not appeared for employment, was not entitled to receive TTD benefits even if a connection between her post-separation wage loss and her industrial injury could be established.

Employer, by urging that the holding in *Laurel Manor Care* applies here, seeks to avoid application of the analysis prescribed in *PDM Molding.* We decline to adopt such a broad reading of the *Laurel Manor Care* decision and conclude that it is factually distinguishable and inapplicable to this case.

Here, claimant performed the modified job for approximately six months. Although various absences occurred during that period and, in fact, resulted in her dismissal, neither those absences nor her discharge can be equated with a "failure to begin" as that phrase is used in the context of § 8–42–105(3)(d)(I). The common understanding of that phrase does not suggest a continuing duty to perform, but rather refers to a failure to start the modified employment in the first instance. To hold otherwise results in an unduly strained interpretation.

Further, we do not agree with employer that a continuing duty must be read into § 8–42–105(3)(d)(I) to give it proper effect and to avoid absurd consequences. Employer labels this argument the "one second theory" and claims that, without such a continuing duty, § 8–42–105(3)(d)(I) would be thwarted for all practical purposes, because an employee could quit modified employment after only one second on the job and remain eligible for TTD benefits.

As the Panel pointed out, courts have uniformly applied the *PDM Molding* analysis when a claimant returns to work and subsequently loses the employment for reasons that may or may not involve fault. *See Bestway Concrete v. Industrial Claim Appeals Office,* 984 P.2d 680 (Colo.App.1999); *Black Roofing Inc. v. West,* 967 P.2d 195 (Colo.App. 1998). Moreover, the decision in *Laurel Manor Care* recognized that, if the *PDM Molding* analysis were applied to § 8–42–105(3)(d)(I), a claimant would always be able to defeat a statutory claim for termination of benefits by refusing to begin work and relying on the uninterrupted relationship between the wage loss and the industrial injury. In contrast, a claimant who actually performs modified work and subsequently loses the job is not in a position to establish an automatic causal relationship between the industrial injury and the subsequent wage loss.

Based on that distinction, we conclude that *Laurel Manor Care* does not stand for the proposition that the offer of modified employment under § 8–42–105(3)(d)(I) continues after it has been accepted and the work has been commenced. Nor are we persuaded that for § 8–42–105(3)(d)(I) to have true effect, an employer will have to provide new offers of modified employment continuously.

While it may be foreseeable that a claimant will attempt to circumvent § 8–42–105(3)(d)(I) by reporting to the modified employment for only a short time, we do not consider our analysis here to preclude a finding, in appropriate cases, that there has been

a constructive "failure to begin." However, that scenario, as reflected in the duration of claimant's last modified position, is not now before us.

We acknowledge that an employer's efforts to avoid paying TTD benefits by providing an employee with modified work may be frustrated when it becomes necessary to discharge that employee for cause. Nevertheless, we conclude the Panel properly determined that claimant's entitlement to further TTD benefits must be assessed under the test in *PDM Molding*.

Our holding that § 8–42–105(3)(d)(I), by its very terms, does not operate under these circumstances to terminate TTD benefits renders it unnecessary for us to consider employer's separate contention that the Panel erred when it analyzed the effect of § 8–42–105(3)(d)(I) in terms of its relationship to § 8–42–105(3)(b).

The Panel's order is affirmed.

Judge PLANK and Judge NEY concur.