PAINT CONNECTION PLUS and Twin
City Fire Insurance Company,
Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OF-
FICE of the State of Colorado and
Donald Sinkey, Respondents.

No. 09CA0598.

Colorado Court of Appeals,
Div. I.

Jan. 7, 2010.

Hall & Evans, L.L.C., Megan E. Coulter, Douglas J. Kotarek, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

Dawes & Harriss, P.C., Robert C. Dawes, Durango, Colorado, for Respondent Donald Sinkey.

Opinion by Judge DAILEY.

In this workers' compensation proceeding, petitioners, Paint Connection Plus (employer) and Twin City Fire Insurance Company (insurer), seek review of that part of the final order issued by the Industrial Claim Appeals Office (Panel) which upheld the imposition of penalties for the filing of an invalid final admission of liability (FAL). We affirm.

## I. Background

Donald Sinkey (claimant) was injured on January 12, 2007, when he fell from a ladder while working for employer. Petitioners filed several general admissions of liability (GAL) admitting for medical and temporary

disability benefits for a "right shoulder rotator cuff tear and right shoulder SLAP tear only."[1] Claimant's treatment included two surgeries.

In January 2008, claimant's surgeon referred him to another physician for an impairment rating to his right upper extremity. The physician found that claimant had reached maximum medical improvement (MMI) for that injury and had sustained a nine percent total permanent partial impairment due to the loss of range of motion, which equated to a whole-person impairment rating of five percent.

However, the rating physician further opined that claimant was suffering from "probable C6–7 right facet syndrome, chronic"[2] related to his work injury and subsequent surgery, including physical therapy. The physician reported that claimant was not at MMI for this lesser problem and recommended one to three chiropractic mobilizations. The physician stated that he felt the recommended treatment would "greatly improve" the condition and that no permanent impairment would likely result.

In their FAL, petitioners asserted that claimant was at MMI and admitted for permanent partial disability (PPD) benefits based on the rating for claimant's right upper extremity impairment. The FAL also stated:

> Position on Medical Benefits after Maximum Medical Improvement (MMI): The carrier will consider reasonable and necessary medical treatment only as related to the compensable injury of right shoulder rotator cuff tear and right shoulder SLAP tear. Chronic facet syndrome at C6–7 is not part of the compensible [sic] injury and maintenance care for this condition will not be covered.

> Remarks and basis for permanent disability award: [The rating physician] has placed the injured worker at MMI with a 9% impairment to the upper extremity on 01/ 17/2008 (please see attached report).

Claimant objected to the FAL and applied for a hearing on several issues, including the striking of the FAL and penalties. The ALJ found the FAL invalid because the rating physician's worksheets were not attached and its assertion of MMI was inconsistent with the rating physician's report, which stated that claimant was not at MMI for the chronic facet syndrome.

The ALJ imposed penalties against the insurer for a violation of the Workers' Compensation Act pursuant to section 8–43–304(1), C.R.S.2009.

On review, the Panel affirmed both the determination that the FAL was invalid and the imposition of penalties.

## II. Validity of FAL

Petitioners first contend that the ALJ erred in determining that their FAL was invalid because it complied or substantially complied with the necessary requirements set forth in the pertinent statutes and rules. We disagree.

### A. Standard of Review

■ When an ALJ's findings of fact are supported by substantial evidence, we are bound by them. Section 8–43–308, C.R.S. 2009. However, an agency's decision that misconstrues or misapplies the law is not binding. *Pena v. Indus. Claim Appeals Office*, 117 P.3d 84, 88 (Colo.App.2004).

### B. FAL Requirements

Section 8–43–203 (b)(I), C.R.S.2009, requires that an admission of liability specify the amount of compensation to be paid, the person to whom compensation will be paid, the period in which compensation will be paid, and the disability for which compensation will be paid. Section 8–43–203(2)(b)(II), C.R.S.2009, sets forth the necessary components of an FAL and specifically mandates that when an FAL "is predicated upon medical reports, such reports shall accompany" it. Department of Labor and Employment Rule 5–5(A), 7 Code Colo. Regs. 1101–3, requires

---

1. A "right shoulder SLAP tear" is a tear to the cartilage of the right shoulder labrum.

2. "C6–7 right facet syndrome, chronic" references chronic spinal neck pain located at the C6–7 vertebrae.

attachment of not only the supporting medical reports, but also the worksheets and other evaluation information associated with the impairment rating.

Rule 5–5(A) further requires that the FAL "specify and describe the insurer's position on the provision of medical benefits after MMI, as may be reasonable and necessary within the meaning of the Act" and "shall make specific reference to the medical report by listing the physician's name and the date of the report." Department of Labor and Employment Rule 5–5(E), 7 Code Colo. Regs. 1101–3, requires that the FAL be "consistent with the physician's opinion."

■ These requirements are part of a statutory scheme designed to promote, encourage, and ensure prompt payment of compensation without the necessity of a formal administrative determination in cases not presenting a legitimate controversy. *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1179 (Colo.App.2006). In light of that intent, one purpose of the requirements is to put the claimant on notice of the exact basis of the admitted or denied liability so that the claimant can make an informed decision whether to accept or contest the final admission. *See Smith v. Myron Stratton Home*, 676 P.2d 1196, 1200 (Colo.1984) (an admission of liability serves to notify an injured worker of the legal ramifications associated with a claim).

### C.   Consistency with Rating Physician's Report

■ Petitioners maintain that the FAL complied with the necessary requirements by clearly expressing their admission of liability for the injury to claimant's right upper extremity and their denial of compensability for the chronic facet syndrome. They dispute the Panel's conclusion that they chose to ignore both the rating physician's MMI opinion and his finding that the chronic facet syndrome was related to the industrial injury.

However, as the Panel found, the FAL created inconsistencies with the rating physician's narrative report in violation of Rule 5–5(E) by failing to indicate that claimant had

not yet been placed at MMI for the chronic facet syndrome or that the MMI date on the FAL form pertained exclusively to claimant's injury to his right upper extremity. Indeed, petitioners' denial of the compensability of the chronic facet syndrome included in the explanation of its position on post-MMI medical benefits conflicts with the rating physician's specific medical finding that the condition was related to the work injury.

### 1.   Partial MMI

Petitioners nevertheless argue that the FAL requirements, as applied by the ALJ and the Panel, place them in a predicament whereby they cannot admit liability for an uncontested injury to one body part without abandoning their challenge to the compensability of an injury to another body part. However, petitioners' argument necessarily presupposes that MMI can be parceled out among the various components of an industrial injury, a premise we reject.

■ MMI is defined as that point in time when any medically determinable physical or medical impairment resulting from an injury has become stable and when no further treatment is reasonably expected to improve the condition. § 8–40–201(11.5), C.R.S. 2009; *MGM Supply Co. v. Indus. Claim Appeals Office*, 62 P.3d 1001, 1005 (Colo.App. 2002). It represents the optimal point at which the permanency of a disability can be discerned and the extent of any resulting impairment can be measured. *Singleton v. Kenya Corp.*, 961 P.2d 571, 574 (Colo.App. 1998). It also marks the point when permanent disability benefits become available and temporary disability benefits become unavailable. *Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 254 n. 1 (Colo.1996), *superseded on other grounds by* § 8–42–107(7)(b)(I), C.R.S.2009, *as stated in United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152, 1158 n. 7 (Colo.2000); *City of Colorado Springs v. Indus. Claim Appeals Office*, 954 P.2d 637, 639 (Colo.App.1997) (once a claimant reaches MMI, any temporary wage loss ceases and the continuing wage loss becomes permanent and is to be compensated by permanent benefits under section 8–42–107,

C.R.S.2009, not by the continued payment of temporary benefits).

In *Rodriguez v. Hirschbach Motor Lines,* 270 Neb. 757, 707 N.W.2d 232, 238 (2005), the Nebraska Supreme Court addressed the issue of whether MMI is to be determined by reference to the date of healing for each injury resulting from an accident, or by reference to the date on which all of the claimant's injuries from the accident have reached maximum recovery. The court observed that a given condition cannot be both temporary and permanent at the same time and that allowing partial MMI creates the possibility of simultaneous permanent and temporary disability awards for the same accident, a result inconsistent with the workers' compensation scheme and established precedent. *Rodriguez,* 707 N.W.2d at 238. The court concluded that, even if the medical evidence establishes that a claimant's different injuries have different dates of maximum medical recovery, the legally significant date, that is, the date of MMI for purposes of ending a claimant's temporary disability, is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Rodriguez,* 707 N.W.2d at 239.

█ We agree with the reasoning in *Rodriguez* and find it consistent with various Panel decisions holding that MMI is not "divisible and cannot be parceled out among the various components of a multi-faceted industrial injury." *Parra v. Haake Farms,* W.C. No. 4–396–744 (ICAO Mar. 8, 2001); *see also Bernard v. Current, Inc.,* W.C. No. 4–213–664 (ICAO Oct. 6, 1997); *Carrillo v. Farmington PM Group,* W.C. No. 3–111–178 (ICAO Aug. 26, 1997); *Powell v. L & D Electric,* W.C. No. 4–150–716 (ICAO Mar. 21, 1997). Indeed, as the *Rodriguez* court pointed out with respect to Nebraska law, our Workers' Compensation Act contains no provision for "partial maximum medical improvement." *Rodriguez,* 707 N.W.2d at 239. Further, although it may be possible to award PTD benefits before a claimant reaches full MMI when the medical evidence establishes that the claimant has reached MMI for one injury and that injury has resulted in permanent and total disability, *see Rodri-*

*guez,* 707 N.W.2d at 239, petitioners did not confront that situation here.

### 2. Alternatives to Filing the FAL

We also disagree with petitioners' position that the FAL had to be filed in this instance to avoid possible penalties for the failure to timely admit. We conclude that petitioners had a number of other options.

First and foremost, because MMI is not divisible, the rating physician's report triggered no obligation to file an FAL and petitioners, as both parties acknowledged at oral argument, could have waited to admit liability for permanent disability benefits until the rating physician found claimant at MMI for the cervical condition.

A second alternative would have been to request a hearing under section 8–43–207(1), C.R.S.2009, which permits a party to seek a hearing for the determination of any controversy concerning any issue arising under the Act. We are not persuaded by petitioners' argument that any such hearing request would have shifted the burden of proving compensability to them. *See Pacesetter Corp. v. Collett,* 33 P.3d 1230, 1232 (Colo.App. 2001) (it is well established that the claimant must prove the existence of a compensable injury).

By waiting, petitioners also may have been able to utilize the procedure of section 8–42–107(8)(b)(II), C.R.S.2009, which permits an employer or insurer to request an independent medical examination (IME) if no MMI determination has been made and at least eighteen months have passed since the date of the injury. To the extent the ALJ incorrectly concluded that petitioners were required to obtain a division-sponsored independent medical examination (DIME) at the time of the rating physician's report, we agree with the Panel that such misapprehension was in the nature of dicta. It was tangential to the identification of the FAL's deficiencies and, therefore, resulted in no reversible error.

Another approach, as suggested by the ALJ, would have been for petitioners to contest a request by claimant for the recommended chiropractic treatment. *See* Depart-

ment of Labor & Employment Rules 16–9(F), 16–10, 16–11(B), 7 Code Colo. Regs. 1101–3.

### D. Worksheets

■ We also agree with the Panel that the submission of the worksheets several months later did not validate the FAL. A claimant who has not been provided with the full medical information supporting the FAL cannot reasonably be expected to decide whether to accept or contest it. Moreover, the pertinent statutes and rules contain no exception allowing the attachment of incomplete medical reports, and, as the ALJ noted, the American Medical Association Guides to the Evaluation of Permanent Impairment (rev.3d ed.) (AMA Guides) require preparation of the worksheets. See AMA Guides § 2.3 at 7, § 3.0 at 13; Dep't of Labor & Employment Rule 12–4(B), 7 Code Colo. Regs. 1101–3 (requiring the use of the instructions and forms contained in the AMA Guides).

Petitioners rely on Aguilar v. Colorado Flatwork, Inc., W.C. No. 4–741–897 (ICAO Aug. 3, 2009), where the Panel declined to construe section 8–43–203(2)(b) and Rule 5–5(A) as imposing an obligation on the insurer to demand that the authorized treating physician prepare worksheets, which otherwise did not exist, so that they could be attached to the FAL. However, we are not persuaded by petitioners' assertion that the rating physician had not prepared the worksheets when the FAL was filed. Neither party disputes that petitioners received the worksheets after the FAL was filed and provided them immediately to claimant. However, contrary to petitioners' representation at oral argument, claimant did not concede the nonexistence of worksheets in his motion to strike the FAL, and we find nothing in the record supporting petitioners' claim that preparation of worksheets occurred, not during the examination, but several months later. In fact, the worksheets are dated the same date as the examination.

In Aguilar, not only were there no worksheets, but the range of motion findings used by the authorized treating physician to calculate the claimant's impairment rating were included in the physical therapist's report, which was attached to the FAL. Thus, as distinguished from this case, the FAL in Aguilar not only contained all available documents, but it also notified the claimant of all the factual predicates for the admitted liability.

The facts concerning the late submission of the worksheets may have provided a basis for mitigating the penalty, but as the Panel found, the late submission of the worksheets established neither substantial compliance with Rule 5–5(A) nor retroactive validation of the FAL.

Accordingly, the ALJ's determination that the FAL was invalid must be affirmed. See § 8–43–308; Leewaye v. Indus. Claim Appeals Office, 178 P.3d 1254, 1256 (Colo.App. 2007) (appellate court's review is restricted; it is bound by the factual determinations of the ALJ if they are supported by substantial evidence in the record and it may not set aside the Panel's decision if it is supported by the applicable law).

### III. Failure to Endorse Compensability

Petitioners next contend that the Panel erred in upholding the ALJ's order because claimant failed to endorse compensability as an issue on his application for hearing, thereby depriving the ALJ of jurisdiction to decide the relatedness of the chronic facet syndrome. However, because the ALJ did not determine the compensability of the chronic facet syndrome or otherwise resolve its relatedness to the admitted industrial injury, we need not consider this issue.

In support of their contention, petitioners maintain that the ALJ credited the rating physician's opinion that claimant was not at MMI, and by doing so, implicitly determined that the chronic facet syndrome was compensable. We find no such determination in the order. Further, the order contains no award of disability or medical benefits. It includes only a brief discussion of relatedness to address petitioners' unsuccessful argument that, because compensability of the chronic facet syndrome had not been previously established, they were not obligated to ac-

knowledge the rating physician's finding that claimant was not at MMI for that condition.

### IV. Penalties

■ Petitioners also contend that the ALJ erred by imposing penalties. We disagree.

Under section 8–43–304(1), penalties may be imposed against an employer who

(1) violates any provision of the [Workers' Compensation] Act; (2) does any act prohibited by the Act; (3) fails or refuses to perform any duty lawfully mandated within the time prescribed by the director or the Panel; or (4) fails, neglects, or refuses to obey any lawful order of the director or the Panel.

*Pena,* 117 P.3d at 87.

■ The failure to comply with a procedural rule is a failure to obey an "order" within the meaning of section 8–43–304(1). *Pioneers Hosp. v. Indus. Claim Appeals Office,* 114 P.3d 97, 98 (Colo.App.2005). An insurer or employer fails to obey an order if it fails to take the action that a reasonable insurer or employer would take to comply with the order. The conduct of an insurer or employer is "measured by an objective standard of reasonableness," *Jiminez v. Indus. Claim Appeals Office,* 107 P.3d 965, 967 (Colo.App.2003), and its reasonableness depends on whether it was predicated on a rational argument based on law or fact. *Diversified Veterans Corporate Ctr. v. Hewuse,* 942 P.2d 1312, 1313 (Colo.App.1997).

■ Whether an insurer's or employer's conduct was reasonable is a question of fact for the ALJ, *Pioneers Hosp.,* 114 P.3d at 99, and we are bound by the ALJ's factual determinations if they are supported by substantial evidence in the record. § 8–43–308; *Christie v. Coors Transp. Co.,* 919 P.2d 857, 860 (Colo.App.1995), *aff'd,* 933 P.2d 1330 (Colo.1997).

Insofar as we have upheld the ALJ's determination that petitioners' FAL did not comply with section 8–43–203(2)(b)(II) or Rules 5–5(A) and (E), we conclude that their conduct violated the Act. We also conclude that the record contains substantial evidence in support of the ALJ's finding that their conduct was not objectively reasonable. Pe-

titioners do not challenge the ALJ's factual determination that claimant did not understand the inconsistencies in the FAL, prompting him to consult an attorney. Further, even if petitioners reasonably may have been misled by the rating physician's partial MMI determination, they were not under an obligation to file an FAL when they did and they could have employed other procedures to address the impact of the rating physician's opinion as to the cervical condition. Accordingly, we must affirm the imposition of penalties in this case. *See Pioneers Hosp.,* 114 P.3d at 99; *Christie,* 919 P.2d at 860.

The order is affirmed.

Judge TAUBMAN and Judge BOORAS, concur.