Elaine **LOOFBOURROW**, Petitioner and Cross–Respondent,

v.

**INDUSTRIAL CLAIMS Appeals OFFICE OF the STATE of Colorado**, Respondent,

and

**Harman–Bergstedt, Inc.**, d/b/a Kentucky Fried Chicken and Zurich American Insurance Company, Respondents and Cross–Petitioners.

No. 10CA2176.

Colorado Court of Appeals, Div. I.

Oct. 13, 2011.

Rehearing Denied Dec. 1, 2011.

550

Law Office of O'Toole & Sbarbaro PC, John Sbarbaro, Denver, Colorado, for Petitioner.

No Appearance for Respondent.

Thomas Pollart & Miller LLC, Margaret Keck, Greenwood Village, Colorado, for Respondents and Cross–Petitioners.

Opinion by Judge TERRY.

In this workers' compensation proceeding, as a matter of first impression, we address whether a claimant who did not challenge a determination that she had reached maximum medical improvement (MMI) of her work-related injury in an open case can obtain temporary total disability (TTD) benefits where she has experienced a worsening of her original injury. Under the unique circumstances presented here, we conclude that she can.

Elaine Loofbourrow (claimant) seeks review of that part of the final order entered by the Industrial Claim Appeals Office (Panel) which set aside the administrative law judge's (ALJ's) award of TTD benefits. Harman–Bergstedt, Inc., and its insurer, Zurich American Insurance Company (collectively employer), cross-petition for review, asking us to set aside the Panel's order insofar as it affirmed the ALJ's determinations as to compensability, transfer of the right of selection to claimant, and the calculation of claimant's average weekly wage (AWW). We set aside the Panel's order overturning the TTD benefits award, affirm the remainder of its order, and remand for further proceedings.

## I. Background

In November 2008, claimant, a manager of a fast food restaurant, developed back problems after an incident in which the cook walked off the job and claimant was left alone to perform all store functions. Employer sent her to an authorized treating physician (ATP), who diagnosed her with back strain. The ATP imposed work restrictions, and treated her with injections and physical therapy that cured and relieved her symptoms. In December 2008, the ATP placed claimant at MMI with no permanent medical impairment and discharged her from care. However, because claimant had lost no time from work, employer did not file either a general admission of liability or a final admission of liability (FAL).

Claimant began to experience pain again in March 2009 and consulted her personal physician. He ordered an MRI, which showed a bulging disc and a small annular tear, and he prescribed an injection, which she received in June 2009.

In August 2009, claimant experienced slightly worse back pain, which prompted her

to go to the emergency room. Two days later, claimant's personal physician placed her on various medications and told her she could no longer work.

Claimant reported her later symptoms to employer. In October 2009, when employer had not provided medical treatment with the original ATP, claimant filed an application for hearing in which she alleged that she "requested authorization [to] return to ATP and claim denied, care selection passed to claimant [sic]." Employer did not provide medical care until January 2010 and claimant continued to treat with her personal physician. She also remained off work under her physician's restrictions.

## II. ALJ's Findings

Following a hearing in which employer contested compensability of the November 2008 injury and claimant's August 2009 symptoms, the ALJ determined that claimant had proved she sustained a compensable injury to her lower back and that she suffered a subsequent worsening of that condition as a result of the natural progression of the initial work injury. The ALJ further found that employer had failed to tender medical care until January 2010 despite claimant's several notifications that she was alleging a worsening of condition. The ALJ, therefore, concluded that the right to select a physician had passed to claimant and that she had exercised it by selecting her personal physician, who was providing authorized treatment. The ALJ awarded claimant TTD benefits as of the date she stopped working, finding that her worsened condition had increased her medical incapacity and that she had also incurred a loss of wage-earning capacity because of the medical restrictions which prevented her from working. For purposes of the TTD award, the ALJ calculated claimant's AWW based on her wages at the time of the November 2008 injury.

## III. Panel's Ruling

On review, the Panel upheld the ALJ's determinations as to compensability, right of selection, and calculation of claimant's AWW. However, it concluded that, because claimant had been placed at MMI with no permanent impairment in December 2008 and there had been no medical determination that she was no longer at MMI as of August 2009, the ALJ erred in awarding TTD. It therefore set aside the ALJ's award of TTD benefits.

## IV. Discussion

### A. Compensability

In its cross-petition for review, employer first contends that the ALJ erred by concluding that claimant's job activities caused her back condition in November 2008 and the symptoms she experienced in August 2009. Employer specifically argues that substantial evidence did not support the ALJ's rejection of its medical expert's opinion as a "non-opinion" and that the ALJ's resulting failure to consider that evidence violated its due process rights. We disagree.

■ A claimant proves compensability by showing, by a preponderance of the evidence, that the injury arose out of and in the course of the claimant's employment. § 8–41–301(1)(c), C.R.S.2011. Whether the claimant has met this burden of proof is a question of fact for determination by the ALJ. *Cabela v. Indus. Claim Appeals Office*, 198 P.3d 1277, 1280 (Colo.App.2008).

■ We uphold the ALJ's factual findings in a workers' compensation case if they are supported by substantial evidence in the record. § 8–43–308, C.R.S.2011. Substantial evidence is that quantum of probative evidence which a rational fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence. *Benuishis v. Indus. Claim Appeals Office*, 195 P.3d 1142, 1144–45 (Colo. App.2008). We must consider the evidence in the light most favorable to the prevailing party and defer to the ALJ's credibility determinations, resolution of conflicts in the evidence, and plausible inferences drawn from the record. *Panera Bread, LLC v. Indus. Claim Appeals Office*, 141 P.3d 970, 972 (Colo.App.2006).

■ The weight and credibility given expert witnesses' testimony is within the ALJ's discretion and may not be disturbed absent a showing that the ALJ's credibility determi-

nation is overwhelmingly rebutted by hard, certain evidence to the contrary. *Heinicke v. Indus. Claim Appeals Office*, 197 P.3d 220, 224–25 (Colo.App.2008).

In concluding that employer's medical expert rendered a "non-opinion" on causal relatedness that did not contradict the opinions of claimant's treating physicians, the ALJ specifically relied on the following colloquy between claimant's counsel and the expert:

Q: Is it still your opinion that my client did suffer at least a temporary exacerbation on November 8th of a preexisting condition that resolved by December 9th ... [?]

A: It would be my opinion that I really can't answer that because I wasn't the treating physician and I wasn't there to treat her on November 8th, 2008, when she actually had the onset of symptoms.

My problem is that she wasn't seen by [the ATP] until November 12th, 2008, and you know, I can't tell you when she sustained pain or when she had this muscle spasm because he didn't see her on November 8th.

Q: If I understand what you're saying, ... [you are] not giving an opinion that it was a compensable injury in November 8, 2008[sic]. Is that a correct statement?

A: Yes, that's a correct statement.

In another portion of his testimony, the medical expert opined that the November 2008 symptoms did not constitute an acceleration or aggravation of claimant's preexisting degenerative disc and facet disease, but simply represented an episodic recurrence of low back pain which resolved completely in December 2008. However, the expert also acknowledged that even if no definitive or objective basis existed to show that claimant experienced a structural change in her osteoarthritis in November 2008, if her work activities at that time caused her back pain, then her symptoms were aggravated, in a pathology sense, by the work activity.

Viewing the expert's testimony in context, we conclude the ALJ did not abuse his discretion in finding that the expert had wavered on the issue of whether claimant had sustained a temporary aggravation of her underlying condition on November 8, 2008. The ALJ's interpretation of the expert's testimony was reasonable, and we have found no evidence in the record that overwhelmingly rebuts it. Further, as noted by the Panel, the ALJ is not held to a crystalline standard in expressing findings of fact and conclusions of law, and his conclusions with respect to the expert's medical opinion do not indicate a lack of consideration, but simply reflect his assessment of it. *See Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office*, 5 P.3d 385, 388 (Colo.App.2000). Therefore, the ALJ did not deprive employer of its due process rights, and his rejection of the expert's testimony as unpersuasive with regard to the cause of either the November 2008 or the August 2009 symptoms may not be disturbed. *See Heinicke*, 197 P.3d at 224–25.

Finally, because the record contains substantial evidence in the form of claimant's testimony and her medical records to support the finding that she suffered a work-related back injury in November 2008 and a worsening of that condition in August 2009, the determination that she met her burden and proved compensability must be affirmed. *See* § 8–43–201(1), C.R.S.2011 (it is claimant's burden to prove entitlement to workers' compensation benefits by a preponderance of the evidence); *Lutz v. Indus. Claim Appeals Office*, 24 P.3d 29, 31 (Colo.App.2000).

## B. Right to Select Treatment Provider

Employer next contends the ALJ erred in finding that the right to select the ATP had passed to claimant even though it had properly designated the ATP at the time of the November 2008 incident. Again, we disagree.

Section 8–43–404(5), C.R.S.2011, gives employers or insurers the right to choose treating physicians in the first instance in order to protect their interest in overseeing the course of treatment for which they could ultimately be held liable. The initial right to select a treating physician is an obligation that must be met forthwith upon notice of an injury, *Bunch v. Indus. Claim Appeals Office*, 148 P.3d 381, 383 (Colo.App.2006), and if

medical services are not timely tendered by the employer or insurer, the right of selection passes to the employee, *Andrade v. Indus. Claim Appeals Office*, 121 P.3d 328, 330 (Colo.App.2005).

Here, employer properly designated an ATP when claimant reported the November 2008 incident. However, the record substantially supports claimant's account that she reported to employer the August 2009 symptoms as an exacerbation of the 2008 injury or a new injury and informed employer that her physician thought the symptoms might be work-related. The evidence does not indicate that when employer received claimant's notice of the August 2009 symptoms, it instructed her to return to the ATP or otherwise authorized treatment with the ATP. Instead, according to the uncontradicted testimony of employer's supervisor and claimant, employer first referred claimant to its workers' compensation liaison and then to the adjuster. Claimant testified that the adjuster told her that she did not need to go back to the ATP, and the adjuster testified that, although she did not remember her actions at the time, she neither authorized nor denied treatment at the time of claimant's initial reports. The adjuster also acknowledged that she did not refer claimant for medical treatment even after receiving a copy of the hearing application.

Under these circumstances, the ALJ reasonably inferred that employer did not provide treatment in a timely manner and that the right of selection passed to claimant. *See Bunch*, 148 P.3d at 383 (an employer is deemed notified of an injury when it has some knowledge of facts connecting the injury or illness with the employment and indicating to a reasonably conscientious manager that a potential compensation claim may be involved). Employer's challenge to the compensability of the 2009 symptoms did not excuse its obligation to tender timely treatment. *See Yeck v. Indus. Claim Appeals Office*, 996 P.2d 228, 229 (Colo.App.1999) (employer has right to select treating physician although it contests liability); *see also Andrade*, 121 P.3d at 330 (initial right of selection of treating physician passes to employee where medical services are not timely tendered by employer or insurer). Further, although the ATP did not directly refuse to treat claimant for her worsened condition, the ATP did discharge her from care after placing her at MMI.

In concluding that the ALJ did not err, we necessarily reject employer's contention that because it correctly designated the ATP in 2008, claimant was free to continue treating with that physician in 2009, and she was not required to seek permission from employer to continue her treatment. The circumstances presented here demonstrate that it would have been a useless formality for claimant to have directly sought additional treatment with the ATP, given claimant's testimony that the adjuster told her that she did not need to return to the ATP.

We also reject employer's statutory argument that section 8–43–404(5)(a)(I)(A), C.R.S.2011, limited its obligation to selecting the ATP after claimant's initial injury in November 2008. Contrary to employer's contention, the *Bunch* division did not equate the statutory phrase "in the first instance" with the phrase "at the time of injury." Rather, those phrases are independent. Thus, when, as here, a claimant experiences a worsening of his or her condition, the claimant is not prevented from requesting that the employer select a physician to attend the employee.

Because claimant followed that procedure here without success, the right to select her treating physician properly passed to her.

C. Calculation of Average Weekly Wage

Employer argues that the ALJ erred in calculating claimant's AWW as of the date of the November 2008 injury because he did not take into consideration the reduction in her wages resulting from a demotion or otherwise fairly reflect her wage loss and diminished earning capacity. We are not persuaded.

Under section 8–42–102, C.R.S. 2011, the ALJ may choose either of two methods to calculate a claimant's AWW. *Benchmark/Elite, Inc. v. Simpson*, 232 P.3d 777, 780 (Colo.2010). The first method, referred to as the "default provision," provides

that an injured employee's AWW "be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured. employee was receiving at the time of the injury." § 8–42–102(2), C.R.S.2011; *Benchmark/Elite, Inc.*, 232 P.3d at 780. The phrase "at the time of the injury" refers to the "date of the employee's accident," and when an employee's AWW is determined pursuant to the default provision, the wage on the date of the accident shall be used. § 8–42–102(5)(a), C.R.S.2011.

The second method, referred to as the "discretionary exception," applies when the default provision "will not fairly compute the [employee's AWW]." § 8–42–102(3), C.R.S. 2011; *Benchmark/Elite, Inc.*, 232 P.3d at 780. This second method gives the ALJ discretion to "compute the [AWW] of said employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's [AWW]." § 8–42–102(3).

 The overall purpose of the statutory scheme is to calculate "a fair approximation of the claimant's wage loss and diminished earning capacity." *Campbell v. IBM Corp.*, 867 P.2d 77, 82 (Colo.App.1993). Because the authority to select an alternative method for computing the AWW is discretionary, we may not interfere with the ALJ's order unless it is beyond the bounds of reason, that is, where it is unsupported by the evidence or contrary to law. *Pizza Hut v. Indus. Claim Appeals Office*, 18 P.3d 867, 869 (Colo.App.2001).

 Here, the Panel concluded that, although the ALJ did not comment on claimant's demotion and change of wages, the use of claimant's earnings in the year of her injury as the basis for the calculation of the AWW in this case did not exceed the bounds of reason. Employer maintains that claimant's demotion to relief manager shortly after she reached MMI was not connected to or a result of her alleged work injury, and, instead, occurred because of low profits at her store, as testified to by her manager. However, the only corroborating evidence employer points to is an evaluation by her original ATP reporting claimant's belief that

her 2008 symptoms did not jeopardize her job and the fact that she had sustained no permanent impairment in 2008. However, such evidence does not conclusively establish that claimant's symptoms had no impact on her job performance and that her demotion occurred for reasons wholly unrelated to her work injury. We therefore conclude that employer did not prove that the calculation of wages according to the "default" provision would result in an unfair approximation of claimant's wage loss and diminished earning disability. Thus, the ALJ acted within his discretion in calculating claimant's AWW based on her 2008 wages under section 8–42–102(2) without resort to the "discretionary exception."

### D. Award of TTD Benefits After MMI Finding

In her petition for review, claimant argues that the Panel erred by determining that she was not entitled to temporary disability benefits despite having demonstrated a worsening of her condition because she did not challenge the MMI determination made by the original ATP. Under the unique circumstances of this case, we agree and, therefore, reinstate the ALJ's award of TTD benefits.

 An essential component of the injured employee compensation scheme, TTD benefits exist to help offset lost wages when an employee cannot work due to a work-related injury. *Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 327 (Colo.2004). To establish eligibility for disability compensation including TTD benefits, a claimant must show a causal connection between a work-related injury and a subsequent wage loss. *See* § 8–42–103(1), C.R.S.2011; *Liberty Heights at Northgate v. Indus. Claim Appeals Office*, 30 P.3d 872, 873 (Colo.App. 2001).

 TTD benefits continue until one of the events enumerated in section 8–42–105(3), C.R.S.2011, occurs, including, as pertinent here, the placement of the injured employee at MMI. § 8–42–105(3)(a), C.R.S.2011. The MMI determination signifies that the claimant's condition has become stable in that no further treatment is reasonably ex-

pected to improve the condition, and that the permanent effects of the injury can be ascertained. § 8–40–201(11.5), C.R.S.2011; *Olivas–Soto v. Indus. Claim Appeals Office,* 143 P.3d 1178, 1180 (Colo.App.2006). It also marks the point when permanent disability benefits become available and temporary disability benefits become unavailable. *Paint Connection Plus v. Indus. Claim Appeals Office,* 240 P.3d 429, 432 (Colo.App.2010).

▪ Under section 8–42–107(8)(b) and (c), C.R.S.2011, an ATP's determination as to MMI and medical impairment cannot be disputed in the absence of a division-sponsored independent medical examination (DIME). *Berg v. Indus. Claim Appeals Office,* 128 P.3d 270, 272 (Colo.App.2005). Thus, a DIME is a prerequisite to any hearing concerning the validity of an ATP's finding of MMI, and, absent such a DIME, an ALJ lacks jurisdiction to resolve a dispute concerning that determination. *Town of Ignacio v. Indus. Claim Appeals Office,* 70 P.3d 513, 515 (Colo.App.2002).

However, under section 8–42–107.2(2)(a)(I)(A), C.R.S.2011, the claimant's time to select a DIME does not begin until an FAL, which also includes an impairment rating, has been mailed by the employer or its insurer. And if the selection request and notification are not made within thirty days after the FAL has been mailed, the ATP's findings and determinations will become binding. § 8–42–107.2(2)(b), C.R.S.2011.

▪ Employer does not dispute that it did not file an FAL and that the 2008 claim remained open. In apparent recognition of the fact that the 2008 claim had not been closed and that the reopening procedures of section 8–43–303, C.R.S.2011, did not apply, claimant's attorney withdrew the issue of reopening originally designated on the hearing application. The fact that no FAL had been filed meant that the claim remained open, but also meant that claimant was not yet able to use the DIME notice and selection procedures required to challenge the MMI determination.

▪ We agree with the Panel that an ATP's MMI determination is binding if not challenged under the DIME procedures and

that TTD benefits must terminate under section 8–42–105(3)(a) once MMI is reached. *See Story v. Indus. Claim Appeals Office,* 910 P.2d 80, 81–82 (Colo.App.1995) (ALJ had authority to grant a change of physician after claimant reached MMI to the extent that the change was for purposes of obtaining future medical treatment to relieve the effects of the industrial injury or prevent deterioration; but, because no DIME had been obtained, the ALJ exceeded his authority in granting such a change to the extent it was for purposes of obtaining treatment to further cure the injury, to reach MMI, or to reinstate TTD benefits).

However, in this instance, claimant did not contest either the ATP's MMI determination or the finding of no permanent impairment, and nothing suggests that claimant was attempting to circumvent the ATP's finding regarding MMI. By all indications, claimant accepted the ATP's findings that her condition had stabilized and that she was able to continue in her employment without restriction.

Although the MMI determination becomes binding if not challenged, the pertinent statutes do not preclude the assertion of a post-MMI worsening of condition in an open claim, particularly where such a change would be sufficient to support a petition to reopen had the claim been closed by an FAL. In that regard, we consider the Panel's reliance on section 8–42–105(3)(a) to be misplaced. That statute, which provides for termination of TTD benefits when a claimant reaches MMI, presumes that the claimant has been receiving such benefits. That was not the case here.

▪ Further, we have already concluded that substantial evidence supports the ALJ's determination that claimant proved she had sustained a worsening of her condition that was related to the 2008 industrial injury. *See Heinicke,* 197 P.3d at 222 (a change in condition refers either to a change in the condition of the original compensable injury or to a change in claimant's physical or mental condition which can be causally connected to the original compensable injury). She testified that her symptoms resolved following

her placement at MMI, that her back was fine for some time thereafter, and that when her pain, which had been bearable, worsened and prompted her to seek treatment in the emergency room, her symptoms were similar to those she had experienced when the 2008 injury occurred. Substantial evidence of causation is not restricted to credible medical testimony and, contrary to employer's assertion, claimant's testimony was sufficient to establish with reasonable probability that her condition had worsened, and that the worsening was attributable to the accident. *See Savio House v. Dennis,* 665 P.2d 141, 142–43 (Colo.App.1983). Indeed, although employer has contested the compensability of claimant's 2009 condition, there appears to be no dispute that her current condition has rendered her disabled and caused her a wage loss.

This case must be distinguished from the ordinary scenario where MMI represents the point of stabilization when temporary disability benefits stop and permanent disability benefits become available. *See Paint Connection,* 240 P.3d at 432. Here, rather than seeking to have temporary disability benefits reinstated for the period occurring after the MMI determination or challenging the finding that she sustained no permanent impairment, claimant only alleged a worsened condition. Her former condition was relevant only for purposes of establishing a worsening that was related to the industrial injury. Therefore, we conclude that the previous finding of MMI did not foreclose a later inquiry into whether her condition had actually worsened.

Because claimant's condition has resulted in an increase in her physical restrictions and has caused her to suffer a wage loss not previously experienced, we conclude that the ALJ correctly found that she was entitled to TTD benefits. *Cf. City of Colorado Springs v. Indus. Claim Appeals Office,* 954 P.2d 637, 640 (Colo.App.1997) (claimant, who had reached MMI for an industrial back injury, was not entitled to further TTD benefits for a shoulder injury sustained as a result of the treatment he received for the back injury absent a showing that he had suffered an actual temporary loss of wages because of

the later injury). Accordingly, the ALJ's award of TTD benefits must be reinstated on remand.

That part of the Panel's order overturning the ALJ's award of TTD benefits is set aside, and the case is remanded as directed. In all other respects, the Panel's order is affirmed.

Judge TAUBMAN and Judge MILLER concur.