25CA0994 Mosley-Stichter v ICAO 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0994
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-258-854

---

Cherise M. Mosley-Stichter,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Denver Public
Schools,

Respondents.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Moultrie and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Cherise M. Mosley-Stichter, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema Law, LLC, Alana McKenna, Denver, Colorado, for Respondent Denver
Public Schools


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this worker's compensation action, Cherise M. Mosley-Stichter appeals an order denying her requests for additional temporary disability benefits.  We affirm.

## I.     Background

### A.     February 2021 Injury

¶ 2     Mosley-Stichter worked for Denver Public Schools (Employer) as a paraprofessional.  On February 17, 2021, she suffered a work injury to her right knee (February 2021 injury).  As the record in a companion case, 25CA0107, shows, her authorized treating physician, Dr. Jay Reinsma, diagnosed a right knee strain.[1]  He prescribed various treatments and assigned her work restrictions to accommodate healing.

¶ 3     On June 22, 2021, Dr. Fredric Zimmerman determined that Mosley-Stichter had reached maximum medical improvement (MMI), and Dr. Reinsma agreed.  They prescribed permanent work restrictions and maintenance care.

---

[1] We may take judicial notice of court files in related proceedings. *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64.

¶ 4     In August 2021, Employer filed a Final Admission of Liability, admitting, as relevant here, that Mosley-Stichter reached MMI on June 22, 2021.

### B.     September 2021 Injury

¶ 5     The following month, Mosley-Stichter reported to Dr. Reinsma that she reinjured her knee on or around September 20, 2021, while at work (September 2021 injury).  Significantly, she did not file a new workers' compensation claim at that time.  Dr. Reinsma rescinded his MMI finding based on the reinjury.  At a follow-up appointment a few days later, Dr. Reinsma noted that Mosley-Stichter was not working at all, because "no light duty work is available."

### C.     TTD Benefits

¶ 6     Employer reopened the February 2021 claim — the only workers' compensation claim that existed because Mosley-Stichter had not filed a new claim based on the September 2021 injury.  In October 2021, Employer filed a General Admission of Liability, admitting liability for temporary total disability (TTD) benefits based on an average weekly wage of $763.74, beginning September 21, 2021.  Employer paid TTD benefits through March 14, 2022, and

began making permanent partial disability payments on March 15, 2022, when Dr. Reinsma determined that Mosley-Stichter had again reached MMI.

### D. New Workers' Compensation Claim

¶ 7      In August 2022, Mosely-Stichter underwent a division-sponsored independent medical exam with Dr. Justin Green. He concluded that Mosley-Stichter had reached MMI for the initial injury on June 22, 2021. Employer filed a Final Admission of Liability, admitting liability consistent with Dr. Green's report.

¶ 8      Over a year later, in December 2023, Mosley-Stichter filed a new workers' compensation claim, asserting that the September 2021 injury constituted a new injury. Employer filed a General Admission of Liability admitting liability only for medical benefits — not lost wages.

¶ 9      Dr. Stephen Danahey became Mosley-Stichter's authorized treating physician in connection with this new claim. On November 15, 2024, Dr. Danahey opined that Mosley-Stichter had reached MMI as to the second injury on March 15, 2022 — well over a year before she filed the new claim.

## E.    Hearing

¶ 10    At Mosley-Stichter's request, an administrative law judge (ALJ) held an evidentiary hearing to determine whether she was entitled to additional temporary disability benefits in connection with the September 2021 injury.  Mosley-Stichter did not dispute that she had reached MMI for the February 2021 injury on June 22, 2021, and that she reached MMI for the September 2021 injury on March 15, 2022.  The ALJ found that Mosley-Stichter indeed lost wages "following the September 20, 2021[,] work injury," that she "was entitled to TTD benefits for the period of September 21, 2021[,] until March 14, 2022," and that Employer "paid [her] TTD benefits for this entire period."  The ALJ noted that, although she "sustained two injuries, she sustained one wage loss, for which she was compensated," and that awarding additional temporary disability benefits "would result in [her] being compensated for more than her actual lost wages."

¶ 11    Mosley-Stichter appealed to the Panel, which issued a comprehensive order affirming the ALJ's order.

## II. Discussion

### A. Standard of Review and Legal Principles

¶ 12    Under section 8-43-308, C.R.S. 2025, we may not disturb the ALJ's factual findings when "supported by substantial evidence," and we may only set aside the Panel's decision if (1) the factual findings (as adopted by the Panel) are not sufficient to permit appellate review; (2) the record reflects unresolved conflicts in the evidence; (3) the factual findings do not support the order; or (4) the award or denial of benefits is not supported by applicable law.

¶ 13    A claimant is entitled to TTD benefits when a work-related injury prevents her from working; she is entitled to temporary partial disability (TPD) benefits when her work-related injury results in her working modified duty for less pay. *Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 327 (Colo. 2004); *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Off.*, 5 P.3d 385, 390 (Colo. App. 2000). Temporary disability benefits serve to offset wages lost on account of the work-related injury. *See Anderson,* 102 P.3d at 327 (discussing TTD benefits).

¶ 14    An employee's entitlement to temporary benefits ends where, as pertinent here, the injured employee reaches MMI.

§§ 8-42-105(3)(a), 8-42-106(2)(a), C.R.S. 2025. The MMI determination signifies that the employee's condition "has become stable in that no further treatment is reasonably expected to improve the condition, and that the permanent effects of the injury can be ascertained." *Loofbourrow v. Indus. Claim Appeals Off.*, 321 P.3d 548, 555-56 (Colo. App. 2011). Once an employee reaches MMI, any continuing wage loss "is now *permanent* and is to be compensated by the claimant's receipt of *permanent* benefits under § 8-42-107, C.R.S. [2025], not by the continued payment of [temporary disability benefits]." *City of Colo. Springs v. Indus. Claim Appeals Off.*, 954 P.2d 637, 639 (Colo. App. 1997).

## B.     Double Recovery

¶ 15     As we understand Mosley-Stichter's first argument on appeal, she asserts that, even though she was not entitled to TTD benefits for the February 2021 injury (because she had reached MMI in June 2021 and thus was ineligible for TTD benefits for the period beginning in September 2021) but nonetheless received them between September 21, 2021 and March 14, 2022, Employer should have paid her temporary total or partial disability benefits for the September 2021 injury but failed to do so. In other words,

she contends that Employer mistakenly paid her TTD benefits for the February 2021 injury and should pay her again for the September 2021 injury during the same time period.

¶ 16    As the Colorado Supreme Court has noted, workers' compensation benefits "are designed to prevent destitution of an injured worker." *Anderson*, 102 P.3d at 327.  To that end, temporary disability benefits function to offset the wages a worker lost due to a work-related injury.  *Id.*  They do not serve to facilitate a windfall for a claimant.  *See id.*

¶ 17    Mosley-Stichter received TTD benefits offsetting her wage loss from the time she suffered the September 2021 injury until she achieved MMI for that injury on March 15, 2022.  She does not argue that she received less than the statutorily mandated amount.

¶ 18    That Employer attributed those benefits to Mosley-Stichter's then-sole worker's compensation claim, based on the February 2021 injury, is immaterial.  Recall, Mosley-Stichter did not file a distinct workers' compensation claim for the September 2021 injury until December 2023 — well over two years after the injury occurred, and well after the time period in question.  Thus, between September 2021 and March 2022, Employer could not have

attributed temporary disability benefits to the September 2021 injury, because, at that time, all parties were treating the injury as a reinjury of the February one.

¶ 19    Therefore, awarding Mosley-Stichter additional TTD benefits for that time period would result in her receiving, in total, over 133 percent of her wages lost during that period. *See* § 8-42-105(1). Even awarding Mosley-Stichter additional TPD benefits, which she seeks in the alternative, would result in her receiving more than the maximum offset section 8-42-105(1) provides for a person totally unable to work. *See* §§ 8-42-105(1), 8-42-106(1). That is not an offset; it is a windfall, and we cannot and do not interpret the statutes to allow it.

## C.    Post-MMI Benefits

¶ 20    Mosley-Stichter also argues that she should have received temporary disability (total or partial) benefits through October 2024 because Dr. Danahey opined as to her MMI date for the September 2021 injury in November 2024 — even though he determined she reached MMI as of March 15, 2022. Simply put, Mosley-Stichter asserts that she is entitled to temporary disability benefits for an

8

additional thirty-two months beyond her MMI date for the September 2021 injury. This argument similarly fails.

¶ 21　　As noted above, a claimant is no longer entitled to receive temporary disability benefits once she reaches MMI. §§ 8-42-105(3)(a), 8-42-106(2)(a). Indeed, when a physician determines MMI retroactively, an employer may recover any overpayment of temporary disability benefits resulting from payments made between the date of MMI and the later date when the physician opined on MMI. § 8-43-303(1), C.R.S. 2025. Moreover, "[f]or an overpayment to result, it is not necessary that the overpayment exist at the time the claimant received the disability . . . benefits." § 8-40-201(15.5), C.R.S. 2025.

¶ 22　　Here, Mosley-Stichter acknowledges that she reached MMI on March 15, 2022. Even if Employer had paid her temporary disability benefits between that date and the date Dr. Danahey established the March MMI date, it would have been able to recover that overpayment. It would make no sense to read the statute to require such an overpayment in the first place, only to turn around and subject that payment to recovery by Employer. Thus, we discern no error in the Panel's holding that Mosley-Stichter is not

entitled to receive back-temporary disability benefits for any period beyond March 15, 2022.

### III. Disposition

¶ 23    We affirm the Panel's order.

JUDGE MOULTRIE and JUDGE BERGER concur.